No. 14,053.

FISHER ET AL. *v.* MINSHALL, ADMINISTRATOR ET AL.
(78 P. [2d] 363)

Decided March 21, 1938.   Rehearing denied April 29, 1938.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. PAUL P. EAGLETON, Mr. RICHARD DOWNING, Mr. HARRY S. CLASS, for plaintiffs in error.

MR. HARRY BEHM, Mr. JAMES R. HOFFMAN, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error, heirs at law of deceased, are hereinafter referred to as the heirs, defendant in error Minshall as the administrator, Number Nine Pearl Street as Number Nine, the deceased as Fisher, and one Thomas Wolfe as Wolfe.

The administrator brought this action against the heirs, seeking simply the court's judgment as to the final

disposition of the assets of the estate. Fisher's will required these to be devoted to a specified trust. This was admittedly impossible. Number Nine, by intervention, sought these assets under the rule of cy pres, i. e., "as near as may be." The court so decreed. To review that judgment the heirs prosecute this writ.

The five assignments present only the question of the sufficiency of the evidence. No material facts are in dispute. But two questions of law require consideration: (1) Does the cy pres doctrine prevail in Colorado? (2) Do the provisions of the will applicable to the trust, their impossibility of execution, and the character of Number Nine, support the application of the doctrine?

1. From the briefs we get much interesting historical and legal learning and many authorities concerning cy pres. For reasons hereinafter appearing these now require no minute diagnosis. The rule has a unique history of hundreds of years. Applied to questions such as the present it means simply that when a charitable bequest fails the court may so dispose of the fund as will most nearly fulfill the intent of the testator. In the dim past the English Lord Chancellor, under the sign manual of the Crown, i. e., as "keeper of the King's Conscience" had almost unlimited discretion. That discretion, as administered by the English courts, has been somewhat curtailed. In most of the American states it has been further materially restricted, on the ground that our courts will, when reasonably possible, effectuate the testator's general intent, but will not make a will for him. This they do under their general equity powers, existing before the birth of the cy pres doctrine and wholly unconnected with any kingly prerogative. The English statute is 43rd Elizabeth, chapter 4, Pickering Statutes at Large, Vol. 7, p. 43.

"The courts * * * never substitute another charity for the charity named by the testator; and it is only in cases where the wishes of the testator cannot be carried out that the trusts fail. * * * The details of the statute,

and the remedies provided therein, are not applicable to our conditions or institutions and are not in force here. * * *." *Clayton v. Hallett,* 30 Colo. 231, 247, 70 Pac. 429.

The statute "is not the origin of the doctrine of charitable trusts which the equity courts of England, both before and after its adoption, were wont to enforce." *Robbins v. County Com'rs,* 50 Colo. 610, 620, 115 Pac. 526.

■ The doctrine is usually limited to cases where a general charitable intent is disclosed, and denied where a narrow and exclusive one is indicated. Bogert, Trusts and Trustees, vol. II, p. 1307, §436; *Teele v. Bishop of Derry,* 168 Mass. 341, 47 N. E. 422; 11 C. J., p. 359, §76. "If a trust for charity is sufficiently certain to enable the courts, in the exercise of their ordinary chancery powers, to carry out the donor's charitable intent they will not allow the trust to fail, * * *." *Kemmerer v. Kemmerer,* 233 Ill. 327, 84 N. E. 256.

■ It appears that while, to a certain extent, 43rd Elizabeth, chapter 4, is a part of the law of Colorado, its details and remedies are not. Nevertheless, under their ordinary equity powers, the courts of this state may make such modifications and alterations in charitable bequests, otherwise impossible of exact execution, as are consistent with testator's intent. Is this such a case? The answer to that question requires an examination of that portion of the will involved and a consideration of the failure of the trust as specified, and the character of Number Nine.

2. Fisher died in California in 1908. By his will he left his real estate, including specifically the "Fisher ranch," and other property to Wolfe. Plaintiffs in error are either brothers and sisters of Fisher (to whom he left $10 each) or the children and heirs of such. In the will he acknowledged himself "indebted to the hereinafter mentioned Thomas Wolfe for many years' valuable services. And it is my wish and purpose hereby to reward and compensate him liberally for all such service so continuously and faithfully given as my trusted agent and business manager." Paragraph 6 of the will reads:

"That, after all existing contracts and legal obligations. are fully paid, and justly discharged. If then there shall remain a sum of money, or landed or any other property in the hands of my executor Thomas Wolfe amounting to, or in excess of Fifty Thousand Dollars, then such sum shall be appropriated and devoted to the founding or erection and maintenance of a Home or Educational Institute for the Moral, Manual and Industrial Training of Indigent Boys. Such Institute or School to be conducted and remain free separate and in no manner connected with any religious organization. Nor is religious nor doctrinal services to be conducted therein. Nor do I desire that Greek, Latin or other foreign languages shall be taught therein. It being my desire that whatever shall be done should aim at the establishing of sound elementary education, to win them from influence they may have been in contact with." Wolfe was named executor without bond, "authorized and fully empowered to decide upon the location of such institution of learning, the qualification of those who may be presented or offer themselves for admission," and empowered "to devote any portion of the Fisher ranch as a foundation for the school or institute herein provided for, according to his own individual judgment." Aside from the property given Wolfe, including a dictionary, and said $10 each to five brothers and sisters, this will contains no specific bequest to any one and no intimation, save as above indicated, that testator left any other. As to what he did leave and what became of it we are largely in the dark. We know only that the will is so badly drawn as to be incapable of interpretation. For instance, how did testator expect that Wolfe would devote the Fisher ranch, his individual property, to this "Home or Educational Institution"? We do know from the record that the will was probated in 1908 and Wolfe appointed executor; that the estate has not been settled; that in 1921 Wolfe was induced, for a consideration of $20,000, paid by his successor with the approval of the

county court, to release his hold on it, and disappeared from the picture; that less than $20,000 now remains for disposition; that nothing has ever been done to carry out the provisions of said paragraph 6; and that the property now remaining is grossly inadequate for the purpose of establishing and maintaining the trust. We know that Number Nine is a corporation, founded in 1927, for the care of indigent boys; that it is at present located in a rented house at number nine Pearl street, Denver, having a maximum capacity for twenty inmates; that there is little manual training there; that some of the boys attend the public schools; that no school program is carried out in the residence; and that the boys are urged to attend religious services, but there are no restrictions on residence or religious choice.

Applicable authorities are in conflict and we make no attempt to reconcile them. We content ourselves with the citation of a few which, in our judgment, support the modified cy pres rule which we believe established in this jurisdiction, which meets our approval, and which we think demand a reversal of this judgment. We pass those dealing with general charitable gifts, since there are no general words in this will.

Where the gift was to one known and trusted by testator, but who could not take, the court declined to sanction its transfer to others unknown to her. *Brown v. Condit*, 70 N. J. Eq. 440, 61 Atl. 1055. Where the gift was of a certain farm to be operated by a relative for a designated class of beneficiaries and the farm proved inadequate for the purpose the court declined to permit a diversion. *Gilman v. Burnett*, 116 Me. 382, 102 Atl. 108. Mere inadequacy of the fund, where testator has fixed no limit, is not permitted to invalidate the gift. *Grimke v. Attorney General*, 206 Mass. 49, 91 N. E. 899. Where the gift was to a specific and particular organization it was held that no general charitable intent was indicated. *Quimby v. Quimby*, 175 Ill. App. 367. All which clearly discloses that in the particular under con-

sideration, as in every other, the controlling element in the interpretation of wills is the intent of the testator, and that intent must be "manifest from the instrument itself." 5 R. C. L., p. 367, §108; *Seibold v. City of Naperville,* 19 Fed. Sup. 281.

Applying the foregoing to the will before us what do we find? Fisher's controlling sentiment, almost an obsession, was his unbounded confidence in Wolfe, a confidence which we now know was misplaced and grossly abused. He believed the home would be promptly built and to Wolfe he entrusted its establishment and operation and the primary control of the conditions of admission. But thirty years have elapsed, nothing has been done, and Wolfe with his $20,000 has faded into the mists. Fisher believed $50,000 the minimum for the purposes of the designated trust. That sum was then wholly inadequate, and in the intervening years it has probably shrunk fifty per cent. By the words "if *then,*" "amounting to or in excess of," and "*then* such sum," he repudiated, as definitely as language could, any authority to attempt an execution of the trust if less than $50,000 should be available for the purpose. By the words "founding or erection," "free," "separate," "location of such institution," "Fisher ranch as a foundation," and "moral, manual and Industrial Training for Indigent Boys," he foreclosed every presumption of a general charitable bequest, or one to an institution already established, or not yet in being but to be founded and controlled by strangers. Hence there is nothing in this record to suggest that at the time of the execution of this will, or at the time of the death of Fisher, he would, had Wolfe then been entirely unknown, have made such disposition of his property as is now proposed; and there is everything in the record to convince us that he would not. Standing in his shoes, gathering his purpose and his dream only from his testament, and looking down the years at changed conditions and shrunken assets, no stretch of the imagination will permit us to believe that

he cherished any purpose or conceived any plan which would be even measurably carried out by the transfer of those assets to Number Nine, or that he would ever have countenanced such a diversion.

Such being our conclusion it follows that the funds in the hands of the administrator must be distributed to the heirs. The will expresses no animosity toward them and contains no hint of a fixed purpose to disinherit them. Nor does any argument appear necessary to establish that these assets are a contingent remainder. 21 C. J., p. 981, §132; Restatement of the Law, Trusts, p. 1280, §413.

The judgment is accordingly reversed and the cause remanded for further proceedings in harmony herewith.

MR. JUSTICE HILLIARD, MR. JUSTICE YOUNG and MR. JUSTICE BAKKE concur.