No. 14,477.

ESTATE OF NICHOLSON.

PEOPLE ET AL. *v.* CITY AND COUNTY OF DENVER ET AL.
(93 P. [2d] 880)

Decided July 3, 1939. Rehearing denied September 11, 1939.

Mr. Byron G. Rogers, Attorney General, Mr. J. Glenn Donaldson, Assistant, Messrs. Lewis & Grant, Mr. Irving Hale, Jr., Messrs. Ewing, Arnold & Weinberger, Mr. Fred W. Mattson, for plaintiffs in error.

Mr. Malcolm Lindsey, Mr. Glenn C. Saunders, Mr. F. A. Williams, Mr. A. L. Doud, Mr. Harry C. Riddle, Mr. John T. Adams, Messrs. Smith, Brock, Akolt & Campbell, Mr. J. H. Shepherd, Mr. Eugene A. Bond, Mr. T. J. Morrissey, Mr. C. D. Bromley, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The defendants, plaintiffs in error, seek to reverse a judgment of the county court of Lake county, approving a contract which has the effect of terminating a trust and directing the trustee to pay over to the parties in interest under a contract the corpus of the trust. The petitioners in the county court were the City and County of Denver, a municipal corporation, the Presbyterian Hospital Association of Colorado, a corporation, Edward D. Nicholson, Ruth B. Nicholson, Samuel D. Nicholson II, and Beldeane B. Richardson, as Guardian of Samuel D. Nicholson II, a minor. The defendants were the People of the State of Colorado and the Denver National Bank as trustee under the last will and testament of Samuel D. Nicholson, deceased. The parties will be designated as they there appeared or by name.

The controversy requires a determination of three

propositions raised by the assignments of error, namely:
(1) Have the trustee and the state appealable interests?
(2) Whether or not the county judge of Lake county was
disqualified to hear the cause under sections 465 and 474
of the Colorado Code of Civil Procedure, '35 C. S. A.,
vol. 1, chapter 39, which sections so far as pertinent are
respectively as follows: Section 465 of the Code pro-
vides: "A judge shall not act as such in any of the follow-
ing cases: In an action or proceeding * * * in which
he is interested * * *." Section 474 provides: "If the
county judge be disqualified for any reason from sitting
on the determination of any action or proceeding pending
before him, the cause shall be certified with the original
papers to the district court of the same county, which
shall proceed thereon to final judgment and determina-
tion." (3) Under the trust created by the will, is there
power resident in the defendants in error to terminate
the trust and did their acts, including the making of
the contract, if they had such power, operate as a ter-
mination of the trust?

Our disposition of the case is such that we may assume
without affecting the rights of the parties, and without
determining the question, that the trustee has an appeal-
able interest in the controversy. As to the state, it will
appear in our discussion of the law of the case that it
was not a necessary nor a proper party to a determination
of the issue that, as we view it, is decisive of the contro-
versy. Likewise, our disposition of the case is such,
being based on admitted facts or on facts concerning
which the record discloses, there is, and can be, no dis-
pute, and the law applicable thereto, that we may assume,
without determining the matter, that the county judge
was not disqualified by reason of interest.

Samuel D. Nicholson died March 24, 1923. He had been
a successful early-day miner in Leadville, Colorado, and
had amassed a fortune which at the time of his death
amounted to approximately $1,075,000. There is testimony
that testator in providing for certain charities greatly

underestimated the value of his fortune even to the extent of $300,000, but we shall assume that he was not mistaken and knew the actual value of his estate. He left surviving him two children, Edward and Ruth, of the respective ages of 36 and 29. The life expectancies of these children were respectively 31.07 and 36.03 years. Certain small bequests were made and there was a provision for paying monthly annuities from the trust created to certain of testator's nieces and nephews and three grandchildren until they each arrived at the age of twenty-four years. Ruth died in 1934 at the age of forty years. Her child, one of the testator's three grandchildren, predeceased her. All of testator's nieces and nephews and one of the children of Edward had passed the age of twenty-four at the time of the trial and the other, a minor, has since attained his majority. At the trial he was represented by his guardian. The will provided for monthly payments by the executor beginning immediately after testator's death, and similar payments by the trustee, of $500 a month to Edward for five years and then $1,000 per month for life, and for $150 per month to each of Edward's children until they arrived at the age of twenty-four or until death, if that should occur prior to age twenty-four, at which time such monthly annuities were to cease and the amounts added to the annuity of Edward. The child of Ruth was given $300 a month until age twenty-four or death, at which time it was to cease and that sum be added to the annuity of Ruth which was $1,000 per month beginning at testator's death. For the purposes of this opinion it is a sufficiently accurate description of the trust to say that the testator burdened it with the payment of annuities of $2600 per month. That by the death of Ruth in 1934 this burden was reduced to $1300 per month and will so continue for the life of the trust. The amount in the hands of the trustee bank at the time of the hearing, consisting of the estate of the testator which the bank as executor turned over to itself as trustee and the income thereon not paid out

in annuities, was approximately $930,000. This the record discloses is approximately $100,000 in excess of the amount of the corpus at the time the bank entered upon the trust.

It is pertinent to observe that it appears from the record that Edward is the sole surviving heir of the testator and that he also is the sole surviving heir of his sister Ruth who died intestate and was the only other heir of the testator. In the light of such a state of facts and for the sake of brevity, from this point in the opinion reference will be made to Edward as though he were, at the testator's death, his sole and only heir. Except as to the payment of the annuity to Edward and the payment of an annuity for a matter of two years and a few months to Samuel D. Nicholson II, a grandson, and the making of the appointments for charitable uses directed by the trust provisions of the will, the trust is fully executed.

With the foregoing recital of facts in mind the portions of the will pertinent to the present controversy are as follows:

"Sixth. I hereby give, bequeath and devise all of the rest, residue and remainder of my estate, both real and personal, of every kind, character and description, and wheresoever situate, of which I shall die siezed or possessed unto The Denver National Bank of Denver, Colorado, to be held by it in trust nevertheless for the following purposes:

"(a) To hold, invest and re-invest in interest bearing securities, or in such manner as my said trustee shall elect, so that said trust estate shall produce a reasonable income with safety, and to collect and receive the interest and income therefrom, and my said trustee is hereby authorized and empowered to sell or dispose of any of the real or personal property so given to it in trust, and to execute, acknowledge and deliver any and all deeds, satisfactions, assignments and other instruments necessary in the premises."

\* \* \*

"(i) Upon the death of both of my children, Edward D. Nicholson and Ruth Helen Melville, and the completion of the payment of the foregoing legacies, I hereby direct my said trustee to convert my estate into cash as soon as may be thereafter, and to pay and deliver over one-half of it to the Presbyterian Hospital Association of Denver, Colorado, for the purpose of erecting a wing, or addition, to said hospital to be known as the 'Samuel D. Nicholson Wing (or Addition)'. And with the other half of the residue of my estate to erect a monument in Washington Park in Denver, Colorado, as a gift to said City of Denver, representing and expressing the early day miner to-wit: A bronze figure of a miner on a pedestal with his burro, hammer, drill, pick, spade and shovel, of such appropriate design as my said trustee shall deem best and fitting. Such monument shall have thereon a flag pole with a suitable United States flag thereon, to be furnished and maintained by the City of Denver, Colorado, and shall have placed thereon a bronze tablet containing these words: 'Erected by Samuel D. Nicholson, of Leadville, Colorado'."

The briefs are exhaustive and the authorities cited, numerous, all of which have been examined and considered.

It clearly appears that the primary objective of the testator was to provide for those who naturally, and without the interposition of a will, legally had first claim to his estate. The will evidences no inclination to deprive them of the benefits of his estate, but rather the contrary. Payments to them in specified amounts were to be made without regard to whether the corpus of the trust was or was not invaded. It is not specified that excess income over the annual burden of approximately $31,000 that testator placed in the trust and which but for the untimely death of one beneficiary would have continued in normal expectancy for more than 31 years, should be added to the corpus of the trust. The trust created was not a spendthrift trust, thereby tying the hands of all

connected with it, for it lacked the necessary requirements to make it such. *Newell v. Tubbs,* 103 Colo. 224, 84 P. (2d) 820, wherein we said: "A spendthrift trust 'is a trust created to provide a fund for the maintenance of the beneficiary, and at the same time to secure it against his improvidence or incapacity.' 65 C. J. 230. Clear and unequivocal language is necessary to create such a trust or, in the absence of such language, the intention to create must clearly appear from the language of the entire instrument. 65 C. J. 265.''

Common knowledge of interest rates on permissible legal trust investments—and no others were authorized— would have suggested, and doubtless did suggest, to the testator that the burden imposed on the trust was such as probably would require a regular invasion of the corpus in order to meet it.

The secondary objective of the testator was the two charities. They were to receive nothing until the trust created to effectuate the primary purposes was fully consummated.

With respect to the accomplishment of the second objective the trustee bank calls attention to the fact that neither the Presbyterian Hospital nor the city by virtue of the will nor by virtue of the trust in the bank created by the will take any present interest in the testator's estate. They are merely prospective appointees to be designated by the trustee bank upon the death of Edward under a power contained in the will to carry out certain charitable uses, the hospital by building a wing with one-half of the money arising from a disposition of the testator's estate remaining after the primary purpose of the trust is consummated, and the city by a monument to be constructed out of the other half and turned over to it by the trustee bank. An appointment is defined by Bouvier as: "The designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust.''

In *Clayton v. Hallett,* 30 Colo. 231, 70 Pac. 429,

the court had under consideration the will of George W. Clayton wherein there was a provision that "all the rest, residue and remainder of my estate * * * I do hereby, give, devise and bequeath, unto the corporation of the city of Denver, in trust nevertheless." Then follows a statement of the uses to which the property is to be applied. It therein was held: "That a devise to a corporation for charitable uses operates as an appointment rather than a bequest (2 Blackstone Com. 376)." Here follows the citation of a large number of cases. In the Clayton will the appointment was made by the will. In the case at bar the appointment is not made by the will, but authority is conferred upon a trustee to make such an appointment at a later time and upon the happening of certain conditions. In the Clayton case the appointee city was not objecting to carrying out its duties as trustee. The objector and moving party was one of the heirs of Clayton seeking to have the residuary clause of the will declared null and void. Construed as the trustee bank contends the testator's will should be, the trust created in the bank is purely a nonspendthrift private trust for the benefit of testator's heir to continue during his lifetime, plus a power of appointment conferred upon the bank to be exercised at the heir's death. Under the Clayton will the appointment was made by the will itself and by virtue of that will the city took a present vested interest as trustee in Clayton's estate.

 Not only is there no direct devise or bequest in the will before us operating as an appointment or otherwise to the two charities, but there is no devise over in the event of a failure of the power of appointment. It is contended by the Presbyterian Hospital Association, and not disputed by the trustee bank, that if it should go out of existence and the power as to it thereby becomes incapable of being exercised, that the one-half of the testator's estate ultimately to be devoted to the use of the hospital would pass to the testator's heirs as intestate property. We think this contention correct

in view of our holding in the recent case of *Fisher v. Minshall*, 102 Colo. 154, 78 P. (2d) 363, wherein we said, quoting from *Clayton v. Hallett, supra:* " 'The courts * * * never substitute another charity for the charity named by the testator; and it is only in cases where the wishes of the testator cannot be carried out that the trusts fail'.'' While, as contended by the trustee bank, the probability of the powers of appoinment failing for lack of an appointee is not great, particularly in the case of the city, the imminence or remoteness of the possibility does not alter the law, that in the event of such failure the property to be devoted to charity then passes as intestate property. *Trustees of Cumberland University v. Caldwell*, 203 Ala. 590, 84 So. 846, and *Wright v. Wright*, 225 N. Y. 329, 122 N. E. 213. In the latter case the court said: ''The only bequest to the Washington Heights Library was by means of a trust with a direction 'to pay and deliver' to it after the death of the life beneficiary under the trust. There are in the will no words or provisions which directly or indirectly import a present or vested gift or which indicate such an intent. * * *. Under these circumstances, we have the simple case, free from complications, where there is no gift but by direction to trustees to pay at a future time, and in such a case it is perfectly well settled that the legacy will not vest in the beneficiary until the time for payment arrives. *(Warner v. Durant*, 76 N. Y. 133; *Smith v. Edwards*, 88 N. Y. 92, 109; *Delafield v. Shipman*, 103 N. Y. 463; *Shipman v. Rollins*, 98 N. Y. 311; *Rudd v. Cornell*, 171 N. Y. 114.) ''

In the instant case, under the foregoing authorities, if the power in the trustee bank to appoint is terminated within the lifetime of Edward, the statutes of descent and distribution vest the remainder in him subject to the trust in the bank to pay to him, and for two and one-half years more to his son, certain annuities, if indeed he has not now a vested interest subject to such trust and the powers of appointment. However we need not, for the purposes of this case, and do not, determine whether

Edward, upon the death of the testator, took a vested interest subject to the trust and the power of appointment.

With the situation such as is disclosed by the foregoing recitals Edward, as party of the first part, and his two children, one, the minor (who has since attained his majority), by his guardian, and the Presbyterian Hospital and the City and County of Denver, as parties of the second part, the two last named parties of the second part being respectively authorized, one by resolution of its board of trustees and the other by ordinance duly adopted, entered into a contract, the pertinent provisions of which are as follows:

"Now, Therefore, For and in consideration of the premises and in further consideration of the promises herein contained, the parties hereto hereby agree as follows:

I.

"The parties hereby terminate the trust created under and by virtue of the Will of Samuel D. Nicholson, deceased, hereinabove referred to, as of the closing date hereinafter defined and agree and direct that the proceeds now in the hands of the Trustee, the Bank, be distributed as herein agreed.

II.

"All costs of administration of said trust and all proper charges against the same, including fees and expenses of the Trustee and its counsel, shall be determined as of the closing date hereinafter defined, and shall be paid from said trust as of that day and as a first charge against said trust.

III.

"On the closing date, One Hundred Sixty-three Thousand Dollars ($163,000.00) shall be paid by the Bank to the Trustees of the Samuel D. Nicholson Fund, which is a Board of three Trustees now composed of H. Brown Cannon, F. A. Williams and Frederick H. Reid, self-perpetuating by appointment by surviving trustee or

trustees, and on their failure to provide a full Board of Trustees, by action of the Board of Managers of the Presbyterian Hospital Association, said trustees, and their successors, in trust, to hold, invest, reinvest, manage, use and expend said money or funds and the property or buildings into which said funds may be converted until all of the First Mortgage Bonded Indebtedness upon the real estate of the Presbyterian Hospital Association hereinafter described shall have been paid and discharged, all in their sole and absolute discretion and notwithstanding any limitations of law upon investments by trustees, except that such trustees shall act in good faith and for the following purposes:

"a. The erection of a wing or addition to the Presbyterian Hospital, to be known as the 'Samuel D. Nicholson Wing (or Addition)' and located on that tract of land in the City and County of Denver, near the center of Section thirty-five (35), Township four (4), Range sixty-eight (68) West of the Sixth Principal Meridian and described as follows: [Here follows detailed description of the property.]

"And such wing or addition shall be erected as soon as may reasonably be possible after the payment of all bonded and current indebtedness of the Presbyterian Hospital Association which might become a lien upon such wing or addition when constructed.

"b. The acquisition of the above described property as a whole, free and clear of encumbrance, in which event the entire property, together with the buildings located thereon, shall be named, 'The Nicholson Memorial Hospital.'

## IV.

"That upon the closing date there shall be paid by the Bank to the City and County of Denver, in trust, the sum of One Hundred Forty-one Thousand, Five Hundred Dollars ($141,500.00) to be used by the City and County of Denver for the sole purpose of constructing a building, wing, or addition at Denver General Hospital, to be used

for hospital purposes only, to be known as the 'Samuel D. Nicholson Building, Wing or Addition' and to be marked with a suitable bronze plaque, indicating the donor of the gift, and of such appropriate design as the said City shall deem best and fitting.

## V.

"That upon the closing date there shall be paid by the Bank to Edward D. Nicholson the sum of Fifty Thousand Dollars ($50,000.00).

## VI.

"That upon the closing date there shall be paid by the Bank to Ruth B. Nicholson, party of the fourth part hereto, the sum of Forty-nine Thousand Five Hundred Dollars ($49,500.00), it being the intention of the said Ruth B. Nicholson to invest a substantial portion, and in no event less than fifty per cent (50%) of said $49,-500.00, in an annuity or in sound securities so that she will be assured of a monthly or quarterly income for life.

## VII.

"That upon the closing date there shall be paid by the Bank to Samuel D. Nicholson, II., party of the fifth part hereto, the sum of Forty-nine Thousand Five Hundred Dollars ($49,500.00), it being the intention of the said Samuel D. Nicholson, II., to invest a substantial portion, and in no event less than fifty per cent (50%) of said $49,500.00, in an annuity or in sound securities so that he will be assured of a monthly or quarterly income for life.

## VIII.

"That upon the closing date there shall be paid by the Bank to the State Mineral Resource Board of Colorado the sum of Ten Thousand Dollars ($10,000.00), in trust for the purpose of designing, planning and making complete scientific study of, and doing the preliminary work upon, a deep drainage mine tunnel for and in the Leadville, Colorado, mining area within three years after said

closing date, and in the event the said sum shall not have been so expended by said Board for said purposes within said three years from said closing date, then said Board shall pay over the same, or any part remaining thereof, to the then Mayor of Leadville, Colorado, the then Chairman of the Board of County Commissioners of Lake County and the then County Judge of Lake County as Trustees, to be by them expended within a reasonable time for some other suitable memorial to the said Samuel D. Nicholson, and the early day miner, said memorial to be located in Lake County, Colorado, and not elsewhere.

## IX.

"All cash payments to be made under Paragraphs II to VIII, inclusive, above shall be made by the sale of obligations of the United States of America in so far as possible; provided, however, that not less than Three Hundred Fifty Thousand Dollars ($350,000.00) par or cash value (whichever is greater) of such obligations shall be retained by the Bank for delivery into the trust established under paragraph numbered ten ('X') hereof.

## X.

"Upon the closing date all the rest, residue and remainder of said trust assets shall be delivered by the Bank in kind, in trust, to a new trustee or board of trustees composed as follows: Said trustee shall be the Bank so long as the party of the first part lives. Upon his death the trustee shall consist of a board of five (5) trustees as follows:

"1. The Mayor of the City and County of Denver, or the nominee of the Mayor, to serve during his pleasure said trustee to serve without compensation;

"2. A person named by and to serve during the pleasure of the Board of Managers of The Presbyterian Hospital Association, or such successor as may from time to time be designated by said Board of Managers, said trustee to serve without compensation; and

"3. Three persons (of which the Bank may be one)

576

appointed by and to serve during the pleasure of the Bank, not more than one of whom shall receive any compensation; which Trustee, or Board of Trustees, shall administer and execute said trust in the manner hereinafter set forth and for the purposes hereinafter specified, to wit:

"First: Whenever the management of this trust shall devolve upon a Board of Trustees, said trustees shall act in all things by the concurrence of three or more of them. They shall have power to make all rules and regulations necessary for the management, continuation, and execution of this trust.

"Second: Said Trustee or Trustees shall hold, invest and reinvest the assets of said trust in interest bearing securities in such manner as they shall in their sole discretion elect, and notwithstanding any limitations of law upon investments by trustees, so that said trust estate shall produce a reasonable income with safety, and shall collect and receive the interest and income therefrom; and they are hereby authorized and empowered to sell and dispose of any or all of the real or personal property so given to or acquired by them in trust, and to execute, acknowledge and deliver any and all deeds, satisfactions, assignments and other instruments necessary in the premises. Said Trustees shall not become liable for any loss to said trust estate occasioned other than by their neglect or misfeasance; and

"Third: The assets of this trust shall be distributed and paid out as follows:

"(a) For the cost of operation of the trust;

"(b) To Edward D. Nicholson for life, and thereafter to his wife Amelia T. Nicholson, if she shall survive him, for life, the sum of Thirteen Hundred Dollars ($1300.00) per month; and such sums shall be payable in so far as possible out of the income from said trust, but otherwise from the corpus of said trust; and said payments shall be made monthly and shall commence one month after the last payment which shall be made

from the present trust which arose under the Will of the above mentioned Samuel D. Nicholson;

"(c) Upon the death of both Edward D. Nicholson and Amelia T. Nicholson, there shall be paid over to the Presbyterian Hospital Association of Colorado, either in cash or in kind as the Hospital may elect, one-half of the remaining trust estate;

"(d) Upon the death of Edward D. Nicholson and Amelia T. Nicholson, the remaining one-half of said trust estate shall be paid either in cash or in kind, as the City may elect, to the City and County of Denver and by said City and County of Denver kept in a separate account and used only for the following purposes: For erecting a monument in Washington Park, in Denver, as a gift to said City and County of Denver, representing the early day miner, to wit: A bronze figure of a miner on a pedestal with his burro, hammer, drill, pick, spade and shovel, or of such other appropriate design as will represent and express the early day miner. Such monument shall have thereon a flag pole with a suitable United States flag thereon, to be furnished and maintained by the City and County of Denver, Colorado, and shall have placed thereon a bronze tablet containing these words: 'Erected by Samuel D. Nicholson, of Leadville, Colorado.'

"In no event shall the cost of any such monument exceed the sum of One Hundred Thousand Dollars ($100,-000.00); and any amount remaining in the hands and custody of the City from the distribution of said trust fund, after the erection of such monument, shall be applied and used by the City for the purpose of extending, enlarging or scientifically equipping the Samuel D. Nicholson building, wing, or addition at the Denver General Hospital, hereinabove provided for, but in no event shall any such money be used to defray any current expense or cost of replacement, maintenance, or operation of said Denver General Hospital or any part thereof.

578

## XI.

"The closing date hereinabove referred to shall be five (5) days after the date of this Agreement, provided that if the Bank shall refuse to make the payments specified herein at said time, the closing date shall be the earliest date on which said Bank may be induced or compelled to make such payments.

## XII.

"Until the closing date hereinabove defined shall have arrived and all payments required to be made on the closing date shall have been made, neither this agreement nor any part thereof shall be taken or considered in any way to prejudice any right of any of the parties hereto, and all rights of the beneficiaries under the trust created by the will of Samuel D. Nicholson, deceased, shall continue as heretofore.

## XIII.

"The benefits and burdens of this Agreement shall inure to and be binding upon the successors, heirs, executors, administrators and assigns of the various parties hereto."

The desperate present need of the hospital for funds to purchase its first mortgage bonds now in default in order to prevent a foreclosure appears from the testimony in the record. Such testimony, while objected to by the trustee bank as incompetent, is not controverted. Assuming it is true it shows that the hospital association, in entering into the contract, acted from a worthy motive, that of self preservation. But if in contracting as it did it was acting within its legal rights its motive in so doing, of course, is immaterial. Similarly if the City and County of Denver in contracting was within its rights its motives and objectives are not material, nor so long as the parties to the contract are acting within their rights can the trustee complain of the effect of the exercise of such rights on the trust created in it.

In so far as the will is concerned, it speaks

as of the time of the death of the testator. The conditions under which the bank's power of appointment will become capable of being exercised are sure to happen. The only way in which the exercise of that power can fail at some time will be the happening of the contingency that the appointees become incapable of taking, or that they refuse to accept the appointments. In so far as acceptance of the appointments is concerned if presently tendered, both the hospital and the city, the one a private nonprofit corporation and the other a municipal or public corporation, are sui juris, and each might accept or refuse as it saw fit. "If the owner of property makes a conveyance inter vivos or by will upon a charitable trust and manifests an intention that the charitable trust shall not arise unless the person named by him as trustee accepts the trust, or if the purposes of the charitable trust cannot be carried out unless the person named by him acts as trustee, the intended charitable trust fails if the trustee named by the settlor disclaims (see §397 (2))." Restatement of the Law, Trusts, p. 1107, §354, paragraph c, under comment. "If the settlor manifests an intention that the intended charitable trust shall not arise or shall not continue unless the person named by him acts as trustee, or if the purposes of the trust cannot be carried out unless the person named by him acts as trustee, the intended charitable trust fails unless the person named by him as trustee acts as trustee. Restatement of the Law, Trusts, p. 1190, §397 (2). Only the Presbyterian Hospital can consent to the construction of a wing to its building; only the city can consent to the use of its park as a site for a monument.

If a corporation with legal authority to accept, desires to accept such an appointment, and the appointor refuses to make it, it follows as a matter of course that the attorney general, representing the state as parens patriae, may properly take part in compelling the appointment. Or if the appointment has been accepted by such a corporation or if an estate is directly vested in

it as was the case of the city of Denver under the Clayton will, the attorney general likewise may, by any appropriate action, compel the proper application of the funds to the specified charitable use. But if the charity is to be effected through the media of organized corporate entities, as in the instant case, and these corporate entities desire to waive or to renounce their rights to the appointments, they certainly may do so, and are not subject to compulsion by the authorized appointor—in this case the bank—or by the state, to enter upon particular charitable programs against their wills.

In the light of the foregoing analysis of the will, and the rights of the beneficiaries thereunder and of the heirs of the testator, two questions arise: (1) May the prospective appointees waive or renounce their rights to such appointments prior to the happening of the conditions and the arrival of the time when the appointor is authorized to make an appointment? (2) Do the acts done and the contract entered into between the heir of the testator and the two prospective appointees amount in legal effect, assuming their power so to do, to a waiver or renunciation of their rights to such appointments?

If the charitable organizations through which the charities must be carried into effect are sui juris and the state cannot compel them to enter upon a particular charitable program, of which we have no doubt, there would seem to be no good reason why at any time, after the certainty of their becoming entitled to appointments is established, they might not determine that they do not desire to accept and will not accept such appointments when capable of being made and tendered. As pointed out in *Clayton v. Hallett, supra,* they need not accept or refuse until the time for appointment arrives, but that they need not, does not negative their power to do so. In the instant case the hospital and the city have a right to an appointment in the future, the making of which is imperative on the appointor upon conditions certain to occur. If this right is presently renounced or

waived, it removes the possibility of the divesting of the estate in Edward, the heir at law, if it be vested; or if there has been no vesting in him it removes the barrier and permits an immediate vesting. Whichever may be the process, when the right to the income from the estate and the right to the estate itself unite in the same person, the two merge and the estate is free of the trust.

 ''(1) Except as stated in subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination.

''Comment:

''a. General rule. The beneficiaries of a trust, if all consent and none is under an incapacity, can compel its termination if the continuance of the trust is not necessary to carry out a material purpose of the trust, although the period fixed by the terms of the trust for its duration has not expired. On the other hand, even though they all consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust.

''b. Interest of trustee. If all of the beneficiaries of a trust wish to terminate it, the trust will not be continued merely in order to enable the trustee to obtain further compensation. The trustee as such is not a beneficiary of the trust (see §126, Comment c). The trustee may, however, be one of the beneficiaries of the trust (see §115), and if so, his consent to the termination of the trust is necessary under the rule stated in this section.''
* * *

 ''f. * * * Similarly, if the beneficiary who is entitled to the income acquires the interest of the remainderman, or the remainderman acquires the interest of the beneficiary entitled to the income, or the beneficiary entitled to the income disclaims with the result that the

interest of the remainderman is accelerated, or if a third person acquires the interests of both, the beneficiary who thus becomes the sole beneficiary can compel the termination of the trust.''

\* \* \*

''.(Life beneficiary acquiring interest of remainderman)

''4. A transfers property to B in trust to pay the income to C for life and on C's death to pay the principal to D. D transfers his interest to C. C can compel B to convey the trust property to him.'' Restatement of the Law of Trusts, pp. 1021 et seq., §337.

 If the contract, assuming the power of the two organizations to waive or renounce, amounts in law to a waiver or renunciation, the fact that the rights secured by the charities under the contract with the heir were the motive for the waiver or renunciation is not a question with which courts are concerned. One may act lawfully whether from the best or the worst of motives without being subject to legal criticism or restraint.

We are of the opinion that the contract has this effect. If the hospital is in straits as dire as represented, there very well may be a failure of the trustee's power of appointment by reason of the designated appointee no longer being able to devote one-half of the testator's estate to the specified charitable use. In such case Edward, there being no devise over, would take the one-half of the estate as heir of the testator. By the contract he has surrendered that right which clearly is consideration flowing from him. The hospital, with no present interest in the estate but with a certainty of sometime having tendered to it an appointment which it will have the right to accept or reject, now surrenders that right to appointment for a present consideration from Edward. Edward by virtue of the hospital's waiver of its right to appointment becomes vested indefeasibly with a half interest in the testator's estate, not by virtue of the will nor of any modification thereof, but by operation of the law of descent and distribution. This the testator

might have avoided, had he desired, by making the appointment of the hospital in his will directly thus vesting it with a present and immediate interest or providing for a devise over in the event of the appointment being refused or for any reason becoming incapable of being exercised.

In like manner the city when the appointment is tendered may refuse or reject it. Section 1, article XX of the Constitution of Colorado provides, inter alia, that the City and County of Denver "may receive bequests, gifts, and donations of all kinds of property, in fee simple, or in trust for public, charitable or other purposes; and do all things and acts necessary to carry out the purposes of such gifts, bequests and donations, with power to manage, sell, lease or otherwise dispose of the same in accordance with the terms of the gift, bequest or trust."

That this section grants a power to be exercised or not as the city sees fit is evident from a comparison of this power with others conferred by the same section as for example: "* * * to construct, * * * purchase, acquire, * * * conduct and operate water works, light plants, power plants, transportation systems," etc. Such grants of power have never been considered as a mandate that they be exercised. The city may or may not exercise them as it wills.

By the contract executed pursuant to authority conferred by ordinance, the city has signified its present unwillingness to accept an appointment such as the testator provided for in his will. It has surrendered a right to an appointment which at some time in the future— in so far as it is possible humanly to assert certainty for the future—it certainly would be entitled to receive. If the city's right to the appointment ceases, the one-half of testator's estate is vested absolutely in Edward, subject to the trust in the bank to pay him the specified annuity.

It is contended that the present city council can-

not bind the council that will be the governing body of the city at Edward's death when the trustee bank will have authority under the will to make the appointment. That a legislative body may not by legislative action tie its own hands as to future legislative action, whether it be constituted of the same or different members, is undoubtedly a sound rule and may be conceded to be the law. If the city had, by ordinance, expressly waived its right to the appointment and had done nothing more, that ordinance might be repealed and the city would be restored to its original position as a prospective appointee of charitable uses under the testator's will. But when present legislative action authorizes the making of a contract, under the provisions of which others acquire and surrender rights, as does the ordinance before us, and such a contract is executed, neither the present nor any future council can by ordinance repeal the ordinance by authority of which the contract was entered into and thereby restore itself to its former status and deprive other parties to the contract of advantages which they may have secured thereunder. It may be contended that the ordinance does not in express words waive the right to the appointment, but it does specifically authorize a contract that could not in good faith be entered into by the city and at the same time the claim be made consistently and in good faith that it had not waived or disclaimed such right.

In Restatement of the Law of Trusts, section 337, entitled "Consent of Beneficiaries," paragraph "c" under the heading of "Comment" is as follows: "Withdrawal of consent. If a beneficiary of the trust consents to its termination but withdraws his consent before the trust is terminated, the other beneficiaries cannot compel the termination of the trust, *unless he has entered into a contract with the other beneficiaries to consent to the termination of the trust.*" (Italics ours.)

This is exactly the situation in which the city with a subsequent council attempting to withdraw its consent

would find itself. That the principles of law bind the city and will prevent its repudiation of its agreement similarly will bind the hospital association and prevent a repudiation of its agreement is obvious and requires no elaboration.

 Upon the vesting of the estate in Edward with the consequent termination of the trust created by the will, the trustee bank has no further interest, and may not determine or control the manner in which Edward shall deal with the estate vested in him. In making gifts to his children and directly to charity, in providing for the retention of a part of the estate by himself and in setting up a trust to secure payment of an annuity to himself and his wife for their lives with gifts over to the city and the hospital, he is merely exercising his right to deal with his own property as his judgment directs and this he may lawfully do.

The judgment is affirmed.

MR. JUSTICE FRANCIS E. BOUCK not participating.