## No. 10,728.

### TOWN OF HOLYOKE v. SMITH, ET AL.

Decided April 7, 1924.    Petition for rehearing stricken May 5, 1924.

Action by a municipality to recover charges for electric current.    Judgment for defendants.

### *Affirmed.*

1. CONSTITUTIONAL LAW—*Legislative Powers—Limitation.* In considering the question of constitutional limitation on the powers of the Legislature, courts are to take a broad view of the subject and ascertain, if possible, the purpose for which the limitation was imposed.

2. MUNICIPAL CORPORATIONS—*Twentieth Amendment—Commissions.* Any town within the class mentioned in the twentieth amend-

ment to the Constitution, may free itself from the jurisdiction of any commission, special or otherwise, having power to interfere in local affairs.

3.    *Lighting Plants.* The operation of an electric light plant by a town is the performance of a municipal function specifically authorized by section 8987, C. L. '21.

4.    *Words and Phrases—Special Commission.* A body distinct from the city government, created for a definite purpose, or one not connected with the general administration of municipal affairs, is a special commission.

5.    *Lighting Plants—Legislative Control.* A lighting system is owned and operated by a municipality in a proprietary and not in a governmental capacity, and as such is not subject to legislative control.

6.    UTILITIES COMMISSION—*Municipalities—Rate Regulation.* The fixing of rates to be charged by a municipality for electric current is not an exercise of the police power, and the Public Utilities Commission has no authority in the premises.

*Error to the District Court of Phillips County, Hon. L. C. Stephenson, Judge.*

Messrs. GILLETTE & CLARK, for plaintiff in error.

Mr. T. E. MUNSON, Messrs. ALLEN & WEBSTER, Mr. L. H. DRATH, for defendants in error.

*En banc.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

THE plaintiff in error is a municipal corporation owning and operating an electric light and power plant, and the defendants in error, doing business in the town, were among its customers.

The town council established a schedule of rates for electric current, and the State Board of Public Utilities established a higher rate. The town brought suit to recover the higher rate, which the defendants had refused to pay.

The trial court held that if the law gave to the Public

Utilities Commission the right to fix rates for municipally owned utilities, such as the one in question, it was unconstitutional, the legislature being prohibited by section 35 of article V from delegating the power. Accordingly judgment was entered for the amount fixed locally. The plaintiff brings error.

The question then is: Does the act under consideration (Chapter 127, Laws of 1913), if it gives the commission the power claimed for it, contravene the provision of the Constitution above mentioned. The provision reads as follows: "The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or perform any municipal function whatever."

In considering the question thus raised we are to take a broad view of the subject, and ascertain, if possible, the purpose for which this limitation on the power of the Legislature was imposed.

In *Denver v. Telegraph Co.*, 67 Colo. 225, 184 Pac. 604, this court quoted from Cooley's Constitutional Limitations as follows: "Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government. A constitution is to be construed as a frame of government or fundamental law, and not as a mere statute."

To ascertain the meaning of this provision we may consider its historical background, the conditions existing when it was adopted, and what were the mischiefs against which it was intended to guard. *Schwartz v. People*, 46 Colo. 239, 104 Pac. 92; *People v. Harding*, 53 Mich. 481, 18 N. W. 555, 51 Am. St. Rep. 95.

First, as to the kind of government, and the conditions under which we were living when the Constitution was

adopted. The central idea of government in this country was and is that in local matters municipalities should be self-governing. Prior to the time we are considering, Judge Cooley had said, "Local government is matter of absolute right; and the state cannot take it away." *People v. Hurlbut,* 24 Mich., 44, 9 Am. Rep. 103. He also said, speaking of state Constitutions: "Local self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument. And even if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view." Cooley's Constitutional Limitations (7th Ed.) p. 65.

The right of self-government in cities and towns is coeval with the history of the Anglo-Saxon race. It was confirmed by Magna Charta to cities and boroughs.

As is well known, in New England there were many towns which existed for years without statutory authority, and they were regarded as municipal, or quasimunicipal, without any formal act of incorporation. *Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332.

In Cooley's Constitutional Limitations, (7th Ed.) page 261, it is said that one of the vital ideas in the American form of government is "that local affairs shall be managed by local authorities, and general affairs only by the central authority." These statements by Judge Cooley have been many times quoted with approval by eminent courts, and it may be confidently asserted that the question now before us might properly have been raised, had there been no constitutional provision like that under consideration.

In *State v. Barker,* 116 Iowa, 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222, the court points out the distinction, frequently recognized, between the governmental and the proprietary powers of a city, stating that as to the former the power of the Legislature is unlimited, but that the latter are entitled to constitutional protection. The court

said that these private and proprietary rights of municipalities are a part of the rights retained by the people when the Constitution was adopted, and that "written constitutions should be construed with reference to and in the light of well-recognized and fundamental principles lying back of all constitutions, and constituting the very warp and woof of these fabrics. A law may be within the inhibition of the constitution as well by implication as by expression."

In *State v. Denny*, 118 Ind. 382, 21 N. E. 252, 4 L. R. A. 79, the court held that the right of the people to govern themselves as to matters purely local, through the medium of the local municipal government and officers chosen by themselves, was not surrendered upon the adoption of the Constitution, but was still vested in them, and cannot be taken away by the Legislature. It was therefore held that an act providing for boards of public works to have control over the streets, alleys, etc., of cities was unconstitutional.

That the right of local self-government was reserved by the people in the making of the Constitution was distinctly stated in *Rathbone v. Wirth*, 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408, where the court said that such right is a cardinal principle in our form of government: "A right which inheres in a republican government and with reference to which our Constitution was framed. The habit of local self-government is something which we took over, or rather, continued from the English system of government. * * * The principle is one which it takes but little reflection to convince the mind of being fundamental in our governmental system and as contributing strength to the national life, in its educational and formative effect upon the citizen."

In McQuillan on Municipal Corporations, section 246, it is said: "It is thus obvious that the Constitution must be considered in the light of the local and state governments existing at the time of its adoption. That the principle of local self-government constituted a prominent

feature in both the federal and state governments is a fact that cannot be denied.  *  *  *  The right of local self-government, as an undoubted right of the people, is regarded as an inseparable incident to our republican form of government, and, therefore, all our constitutions assume its continuance."

It is to be noted also that the people have approved the principle of local government by the adoption of the amendment of 1912 to article XX of the Constitution, now appearing as section 6 of that article, by which the right of home rule was extended to every town or city of the state having two thousand inhabitants. Any town within that class may free itself from the jurisdiction of any commission, special or otherwise, having power to interfere in local affairs. This right being thus a part of our political system, we should look for constitutional protection of it, if there were reasons to apprehend that it might otherwise be interfered with.

It is common knowledge that for years prior to the adoption of the state Constitution of Colorado, the Legislatures of several states had repeatedly, by statutes, regulated the internal affairs of cities in those states, and that there had been great opposition to such legislation.

In the very year that our Constitution was adopted, a commission, including very eminent men, was appointed in New York to devise a plan for the government of cities, and they reported that one of the causes of misgovernment in the cities was the assumption by the Legislature of the control of local affairs.

The right of the Legislature thus to interfere in municipal affairs, even though there was no constitutional provision against it, had been several times before the courts of several of the states. 24 Mich. 55; 28 Mich. 228; 29 Mich. 108; 15 N. Y. 532; 55 N. Y. 50; 51 Cal. 15; and 64 Pa. 169.

Unquestionably these facts were had in mind when this provision was framed, and the people in adopting it in-

tended to guard against the evils to which attention had been called by these cases.

It remains only to determine whether or not the people, by the language used, effected their purpose so far as the instant case is concerned. If they have done so, it is our duty so to declare. In *Allor v. Wayne County Auditors,* 43 Mich. 76, 4 N. W. 492, it is said: "It is very unfortunate and very discreditable that so little heed is sometimes paid to the continued and perpetual importance of institutions which form an essential element in the organic life of our government. Courts, at least, are bound to respect what the people have seen fit to preserve by constitutional enactment, until the people are unwise enough to undo their own work. The loss of interest in the preservation of ancient rights is not a very encouraging sign of public spirit or good sense."

Such a statement is very pertinent at this time, when both federal and state government are constantly encroaching upon the right of local self-government.

The operation of the electric light plant by the town of Holyoke is the performance of a municipal function, specifically authorized by statute. Section 8987, C. L. 1921.

The evils to be avoided being such as have been above mentioned, we should, in applying this provision, give it a broad and reasonable, rather than a technical meaning, so as to accomplish its evident purpose. That the purpose was to prevent—generally speaking—any organization being authorized by law to control or interfere with municipal matters, whether it be the making of local improvements, the management of property, or the levying taxes, is clear. Nor can such organization be authorized to "perform any municipal function whatever."

The prohibition is not limited by the fact that the term "special commission" is used, for if there is reason to prohibit a special commission, private corporation, or association from exercising the powers named, it exists as well as to a general commission. Indeed, it is difficult to see why a special commission would not be more desirable

for the performance of municipal functions than a general commission, since it could be made local in its membership, and be assigned to duty in only one, or a few municipalities. Such a commission would be far more likely to perform the assigned duties in a satisfactory manner than would be one having a large field to operate in or supervise.

This section in nowise deprives the Legislature of power to create special commissions for any purpose deemed necessary, and to delegate to them powers other than those mentioned in this section. The prohibition is not upon the creation of a special commission, private corporation, or association, but upon the delegation thereto of certain enumerated powers.

The subjects to which this protection extends by the terms of the section, are such as properly fall within the domain of local self-government. If they are entitled to protection from an agency of the state exercising delegated powers of the kind enumerated, the right thus proposed to be protected would be violated as much by a general commission's doing the mentioned acts as by a special commission's doing the same things.

If the contention of counsel be correct, that the provision is to apply only to a commission specifically limited in time, or extent of operation, the manifest purpose of the provision would not be effected. It would be entirely possible for the Legislature to avoid the prohibition by creating a body to act permanently, and thus not be a special commission in the sense for which counsel contend, or to act throughout the state, if temporary in character. In other words, a body might be authorized to do the things mentioned in the provision, if it did not appear to be special, either in time of duration, or in extent of jurisdiction. It cannot be supposed that an instrument framed carefully, as are constitutions, would so poorly protect the right of local self-government, if it were thought worthy of protection at all. That the makers of

the Constitution intended to protect such rights is evidenced by further provisions.

Section 11 of article XV provides that no street railroad shall be constructed within any city, town or incorporated village, without the consent of the local authorities.

Section 25 of article V prohibits special legislation regulating county or township affairs, or vacating roads, townplats, streets and alleys.

We have heretofore placed a construction on this section which is conclusive upon the point under consideration. In *Milheim v. Moffat Tunnel Improvement Dist.,* 72 Colo. 268, 211 Pac. 649, we had this section under consideration and quoted with approval from *In Re Senate Bill,* 12 Colo. 188, 21 Pac. 481, where it was held that the term "special commission" in this section referred "to some body or association of individuals separate and distinct from the city government; that is, created for different purposes or else created for some individual or limited object not connected with the general administration of municipal affairs."

This court has, therefore, twice held that a body distinct from the city government, created for a different purpose, or one not connected with the general administration of municipal affairs, is a special commission. It cannot be denied that the Public Utilities Commission is a body separate and distinct from the "city government," and that it is created for an object "not connected with the general administration of municipal affairs." The framers of the Constitution had in mind the possibility that the Legislature might attempt to create some special body to interfere with the management of municipal affairs, and wisely made provision to prevent such action.

When the Public Utilities Commission fixes rates to be charged by a lighting plant owned and operated by a municipality, it performs a municipal function. In *Denver v. Telegraph Co., supra,* we held that the regulation of rates by The Utilities Commission is the performance of a municipal function.

Counsel for plaintiff in error rely upon the case of *Public Service Commission v. City of Helena,* 52 Mont. 527, 159 Pac. 24, which sustained the Public Service Commission in its claim of the right to supervise a water system, owned by the city. In so doing the court held that the Commission was not a special commission under the terms of a constitutional provision like ours. The right of self-government, in the respect named, is denied on the ground that the principle of local self-government, "does not exclude the state from the exercise of police power within a city of this state." It is to be observed that the question was not as to the state's power to act directly, but as to its right to delegate the power. The opinion suggests a misapprehension of the scope of the right of self-government, as announced in the cases which sustain the right. They uniformly concede that the right is subordinate to the police power of the state, which is exercised in the public interest. That power is an attribute of sovereignty, governmental in character, but its use is restricted to matters which relate to the health, safety or general welfare of the people. It "can be exercised only to promote the public good, and is always subject to judicial scrutiny." *Forster v. Scott,* 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543.

In *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385, it is said of this power:

"It is universally conceded to include everything essential to the public safety, health, and morals, * * * To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." Cited with approval in *People v. Hupp,* 53 Colo. at page 85, 123 Pac. 653, 41 L. R. A. (N. S.) 792, Ann. Cas. 1914A, 117.

This court has said:

"In order to sustain legislation as a police measure, it must appear, as a general rule, that it tends in a measure to protect the public from manifest evil." *Smith v. Farr,* 46 Colo. at page 380, 104 Pac. 406.

In *Willison v. Cooke,* 54 Colo. at page 326, 130 Pac. 831, 44 L. R. A. (N. S.) 1030, we said: "Legislative restrictions upon the use of property can only be imposed upon the assumption that they are necessary for the health, comfort or general welfare of the public."

In Freund on Police Power, § 378, of the power to fix rates, it is said: "All such legislation will necessarily apply to particular classes of business. Under the principle of equality the classes so singled out should have some special relation to the possibility of oppression. The justification for regulating charges in some particular business would usually be that it constitutes a de jure or a de facto monopoly or enjoys special privileges."

A plant owned and operated by consumers can never become a monopoly, nor can it be an instrument of oppression. Hence there is no room for the exercise of the police power as above defined. The fixing of rates by the consumers through their agents, the town trustees, cannot be an "evil" from which they need protection.

On principle it would seem entirely unnecessary to give a commission authority to regulate the rates of a municipally owned utility. The only parties to be affected by the rates are the municipality and its citizens, and, since the municipal government is chosen by the people, they need no protection by an outside body. If the rates for electric light or power are not satisfactory to a majority of the citizens, they can easily effect a change, either at a regular election, or by the exercise of the right of recall.

These views are sustained by the case of *McFadden v. Board of Supervisors,* 74 Cal. 571, wherein it is held that a board of supervisors, which is authorized by law to fix the rates to be charged by corporations which sell or rent water to the general public, has no power to fix rates of

a corporation which distributes water to its stockholders only. The ground of the rule is obvious.

Where the people are dealing with a privately owned public utility, the situation is quite different, and there is good reason for a commission which shall act in the interest of the public, to avoid the possibility of oppression, of which Professor Freund speaks.

Human nature is such that the management of corporations of the kind named, unless restrained, will charge for services rendered "all that the traffic will bear." As the customers of such a corporation have no part in its control, they are without remedy against unfair treatment, except through some body like the Public Utilities Commission. It should not be overlooked that a lighting system is owned and operated by a municipality, in a proprietary, and not in a governmental capacity. As such it is not subject to legislative control.

In 28 Cyc. at page 299, it is said: "Absolute legislative control over property held by the municipality for other than governmental purposes or public uses is generally denied by the courts upon the ground that such property is private, or at least quasi-private, in its nature, and therefore entitled to constitutional protection against sovereign power."

In *Town of Milwaukee v. City of Milwaukee*, 12 Wis. 93, the court said of a town: "In its political or governmental capacity, it is liable at any time to be changed, modified or destroyed by the legislature; but in its capacity of owner of property, designed for its own or the exclusive use and benefit of its inhabitants, its vested rights of property are no more the subject of legislative interference or control, without the consent of the corporators, than those of a merely private corporation or person."

In *City of Henderson v. Young*, 119 Ky. 224, 83 S. W. 583, it is said: "In the management and operation of its electric plant a city is not exercising its governmental or legislative powers, but its business powers, and may conduct it in the manner which promises the greatest benefit

to the city and its inhabitants, in the judgment of the city council."

In this case we are not called upon to decide as to the constitutionality of the act, but merely to determine its scope, in view of a constitutional provision. It is clear that if the act be construed as giving to the Public Utilities Commission the right to fix the rates in this case, it would to that extent be invalid, because in violation of the section of the Constitution above discussed.

Moreover, it being manifest that the fixing of rates to be charged by the town of Holyoke for electric current is not an exercise of the police power, it would seem that the Public Utilities Commission would have no authority in the premises, even were there no specific constitutional provision involved.

The judgment of the trial court is right, and is accordingly affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE DENISON dissent.