**MESA COUNTY VALLEY SCHOOL DISTRICT NO. 51 and Transportation Insurance Company, Petitioners,**

**v.**

**Leslie W. GOLETZ, Respondent.**

**No. 91SC314.**

Supreme Court of Colorado,
En Banc.

Dec. 9, 1991.

Blackman & Levine, Lawrence D. Blackman, Barbara S. Henk, Denver, for petitioners.

Elder & Phillips, P.C., Walter J. Phillips, M. Frances McCraken, Grand Junction, for respondent.

Paul Tochtrop, Denver, for amicus curiae Colo. Compensation Ins. Authority.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Goletz v. Mesa County Valley School District No. 51*, 813 P.2d 824 (Colo.App.1991). Leslie W. Goletz filed a claim against the Mesa County Valley School District No. 51 (school district) for employee benefits under the Workmen's Compensation Act of Colorado (the Act), §§ 8–40–101 to 8–54–127, 3B C.R.S. (1986).[1] The administrative law judge denied his claim, finding that he did not fit within the statutory definition of an employee under section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986). The Industrial Claim Appeals Panel (Panel) affirmed. The court of appeals found that Goletz was an "appointed" employee under the Act, and reversed. We conclude that the court of appeals erred in its interpreta-

tion of "appointed," and, accordingly, reverse.

## I

The basic facts as found by the administrative law judge are not in dispute. In March 1988, Goletz, a former high school and college baseball player, contacted John McClennan, the head coach of the Central High School baseball team, and asked if he could work on a volunteer basis with the team's pitchers. The baseball season was already underway and the conversation took place on the practice field. At the time, the coaching staff consisted of the paid head coach, two paid assistant coaches, and an assistant pitching coach who had a zero-dollar contract[2] with the school district. McClennan was not advertising or looking for any more coaches, but gave Goletz permission to work with the team's pitchers. Neither compensation nor a zero-dollar contract was offered to Goletz. There was no agreement regarding the regularity of Goletz's attendance at practice or the games.

Goletz attended practice when his work schedule permitted, sometimes as frequently as four times per week, and worked with the pitchers on their pitching skills and strategies. He also attended the team's games to assist the pitchers in their warm-up exercises.

In April 1988, while standing in the team's dugout during a game, Goletz was struck in the face by a line drive and suffered extensive facial injuries. Subsequently, contending that he was an employee of the school district, he filed a claim for compensation and benefits pursuant to the Act.

Section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986), defines an employee for purposes of the Act as: "Every person in the service of the state, or of any county, city, town, or irrigation, drainage, or school district ...

---

1. On July 1, 1990, this act was renamed the "Workers' Compensation Act of Colorado" and renumbered to encompass §§ 8–40–101 to 8–47–209.

2. As used by the school district, a zero dollar contract is an agreement that an individual with

a valid teaching certificate or letter of authorization from the Colorado Department of Education will act as a volunteer under the direct supervision of an authorized coach but will not be paid under the agreement.

under any appointment or contract of hire, express or implied...." The administrative law judge for the Colorado Department of Labor and Employment found that Goletz failed to prove by a preponderance of the evidence that there was either a contract of hire or an appointment to establish his status as an employee and dismissed his claim. After noting that Goletz did not dispute the finding that he was not an employee under a contract of hire, the Panel affirmed, concluding that Goletz was not an employee under an appointment as contemplated by the Act because the term "appointment" refers only to those designated to some public office or position.

The court of appeals reversed, holding that the Panel applied too narrow a construction of the term "appointment," and that, based on the facts as found by the administrative law judge, the head coach had the authority to appoint Goletz to the "office" of assistant pitching coach.

## II

█ Since a plain reading of the statute does not provide any guidance on whether the legislature intended to extend the protections of the Act to persons in Goletz's position, we look to other factors to ascertain the intent, such as the object sought to be served, and the consequences of a particular construction of the statute. *Colorado Civil Rights Comm'n v. North Washington Fire Protection Dist.*, 772 P.2d 70, 78 (Colo.1989).

Appointment is defined as the "designation of a person, by the person or persons having authority therefor, to discharge the duty of some office or trust." *In re Nicholson's Estate*, 104 Colo. 561, 569, 93 P.2d 880, 884 (1939); *Black's Law Dictionary* 99 (6th ed. 1990). Breaking this definition into its parts, there are two components of an appointment. First, the person making the designation must be vested with the authority to do so. Second, the appointment must be for the purpose of discharging the duty of some office or trust.

█ Examining the first component, contrary to the court of appeals, we do not find that the facts establish that McClennan had the authority to appoint persons to the "office" of assistant pitching coach. *See Goletz v. Mesa County Valley School Dist.*, 813 P.2d 824, 826 (Colo.App.1991). The school district allotted the baseball program two paid assistant coach positions, which were filled. The district did allow the use of volunteer zero-dollar contract assistants, but the authorizing signatory on such contracts was the executive director of personnel for the school district, not the head coach. It was the school district, and not the head coach, who had the authority to create additional employee positions that might subject the school district to workers' compensation liability.

█ We also disagree that the position of volunteer assistant pitching coach constitutes an "office" or "trust" within the meaning of "appointment" as used in section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986). In Colorado, the statutory definition of an employee of a private entity differs from the definition of an employee of a public entity. One is an employee of a private entity if "under any contract of hire, express or implied...." § 8–40–202(b), 3B C.R.S. (1986). There is no category for private entity employees "under any appointment." Although we agree with the conclusion that "the definition of public employee was meant to be broader than the definition of employee in the private sector," *Betts v. Ann Arbor Public Schools*, 403 Mich. 507, 271 N.W.2d 498, 499 (1978), we believe that the limitation of the classification of employee by appointment only to the public sector indicates a legislative intent that the term "appointment" is "generally understood to mean the selection of a public officer by one person who is empowered by law to make the appointment." *Main v. Claremont Unified School Dist.*, 161 Cal.App.2d 189, 326 P.2d 573, 577 (1958). Thus, the term "appointment," as used in section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986), involves the naming or designation of some person to hold a public office and involves choice in the selection

of the person.[3] *See State ex rel. Brothers v. Zellar,* 7 Ohio St.2d 109, 218 N.E.2d 729, 732 (1966). Consequently, we are not persuaded that a pitching coach position qualifies as an "office" within the meaning of "appointment."

This interpretation of "appointment" is consistent with our holding in *Lyttle v. State Compensation Insurance Fund,* 137 Colo. 212, 322 P.2d 1049 (1958), where we held that an unpaid commissioner of the State Game and Fish Commission was an employee of the state within the coverage of the Workmen's Compensation Act. There were several factors present in that case that are not present here. The commissioner was appointed by the governor pursuant to a statutory provision that stated: "The commissioner of this district shall *be appointed* by the governor...." § 62–2–1, 3 C.R.S. (1953) (emphasis added). The duties of the commissioner and his right to reimbursement for expenses incurred in the *"discharge of his official duties"* were also statutorily defined. *Id* (emphasis added). The commissioner was, therefore, an appointed employee because he held a public office, and the governor, who had the statutory authority to appoint the commissioner, designated him to discharge certain statutorily defined duties.

The court of appeals inferred from *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204 (Mo.1981), and *Orphant v. St. Louis State Hospital,* 441 S.W.2d 355 (Mo.1969), that Goletz was an employee by appointment. We are not persuaded. The Missouri Workmen's Compensation Law, as in effect when these cases were decided, differs significantly from the Colorado statute. As the Missouri court pointed out, we need only look to the statutory definition of employee in the Colorado Act and not to the common law or the compensation statutes of other states to determine whether an individual qualifies as an employee. *See Orphant,* 441 S.W.2d at 359.

Consequently, since we are of the opinion that Goletz did not qualify as an employee under an appointment pursuant to section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986), we reverse and remand with directions to the court of appeals to reinstate the order of the Industrial Claim Appeals Panel.

3. For example, § 35–75–104(2)(a), 14 C.R.S. (1991 Supp.), gives the governor the statutory authority to appoint one member to the board of directors of the Colorado agricultural development authority, provides the president of the senate with the authority to appoint three members, and gives the speaker of the house of representatives authority to appoint three members. As an additional example, § 13–4–105, 6A C.R.S. (1987), gives the chief justice of the supreme court authority to appoint a judge of the court of appeals to serve as chief judge.