**FRATERNAL ORDER OF POLICE,
COLORADO LODGE # 19,
Petitioner,**

v.

**CITY OF COMMERCE
CITY, Respondent.**

**No. 99SC85.**

Supreme Court of Colorado,
En Banc.

Feb. 28, 2000.
As Modified on Denial of Rehearing
April 10, 2000.*

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Thomas B. Buescher, Denver, Colorado, Attorneys for Petitioner.

Gehler & Merrigan, Thomas E. Merrigan, Commerce City, Colorado, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, Attorneys for Respondent.

Geoffrey T. Wilson, Denver, Colorado, Attorney for Amicus Curiae The Colorado Municipal League.

Franklin P. Lauer, Pueblo, Colorado, Attorney for Amicus Curiae Local 537 of the International Brotherhood of Police Officers.

Bruno, Bruno & Colin, P.C., David J. Bruno, Stacey E. Nickolaus, Denver, Colorado, Attorneys for Amicus Curiae Denver Police Protective Association.

Justice RICE delivered the Opinion of the Court.

We granted certiorari before judgment in the court of appeals pursuant to C.A.R. 50 to review the district court's order declaring binding arbitration provisions contained in an amendment to the City Charter of Commerce City unconstitutional and unenforceable. The voters of Commerce City passed the charter amendment, designated as Ques-

* Chief Justice MULLARKEY and Justice KOUR-  LIS would grant the petition.

tion 2A on the ballot, in November 1998. The charter amendment provides for collective bargaining between police officers and Commerce City, as well as a system of binding arbitration to resolve impasses in negotiations. Following cross-motions for summary judgment, the district court ruled that the binding arbitration provisions violated the Colorado Constitution and were therefore void and unenforceable. We hold that the binding arbitration provisions provide the arbitrator with political accountability in compliance with article XXI, section 4 of the Colorado Constitution. Accordingly, we reverse the district court's order and remand the case for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS BELOW

On November 3, 1998, the voters of the City of Commerce City (the City) approved an amendment to the City Charter, designated on the ballot as Question 2A (the charter amendment). The charter amendment provides for collective bargaining between police officers[1] and the City, as well as a system of binding arbitration to resolve impasses in negotiations. Mandatory subjects for collective bargaining in the charter amendment include wages, hours, vacation, insurance (contribution levels and levels of benefits only), special or additional pay, leaves of absence, promotion procedures, and other related subjects. The charter amendment requires the parties to begin the collective bargaining process on or before May 15 of any year in which the bargaining agreement expires. In the event that the employee organization and the City are unable to reach an agreement on a contract within thirty days of their first meeting, the charter amendment requires "any and all" unresolved issues to be submitted to binding arbitration.

The charter amendment establishes the following system of binding arbitration to resolve impasses in negotiations. Within thirty days after the adoption of the charter amendment, the City is required to solicit applications for a permanent panel of arbitrators.[2] The charter amendment specifies the qualifications and experience necessary to be eligible for the permanent panel of arbitrators and requires the City Council to create a permanent panel of at least three arbitrators from those qualified individuals who apply. The City Council is allowed to add arbitrators to the permanent panel at any time and may also remove arbitrators from the panel at any time, with the exception that an arbitrator who has been selected to hear a dispute may not be removed until after issuing a decision.

If the employee organization and the City are unable to agree on a contract within thirty days as specified above, the employee organization and the City engage in an alternating "strike process" whereby each party alternately eliminates[3] one name from the list of members of the permanent panel of arbitrators until either one or two names remain.[4] If one name remains, that person becomes the arbitrator for the dispute. If two names remain, the Mayor selects one of those remaining two persons to be the arbitrator. The employee organization and the City also are allowed to agree on an arbitrator from the permanent panel in lieu of the strike process.

The arbitrator is required to choose either the final offer of the City or the final offer of the employee organization on each issue in dispute. In arriving at a decision, the arbi-

---

1. The charter amendment defines the bargaining unit as "all full time police officers employed by the Commerce City Police Department plus the community service officers and crime analysts, and excluding the chief of police, captains, and the community service officer supervisor." For the sake of brevity, the term "police officers" is used to denote the bargaining unit.

2. The City has never implemented these procedures due to these legal proceedings challenging the constitutionality of the binding arbitration system.

3. A flip of the coin determines which party strikes first.

4. If the panel originally consists of an *even* number of arbitrators, *two* names will remain; conversely, if the original panel consists of an *odd* number of arbitrators, only one name will remain after the striking process.

trator is required to consider seven factors[5] and issue a written decision. The arbitrator's decision is final and binding on the parties. The charter amendment provides for limited judicial review in that a district court must affirm the arbitrator's decision unless it determines: (1) the award was procured by corruption, fraud, or other undue means; or (2) the decision on any issue is arbitrary and capricious, i.e., there is no competent evidence in the record to support the decision; or (3) the decision on any issue was reached without considering the factors listed in section 21.14 of the charter amendment.

After the voters passed the charter amendment, the City filed a complaint pursuant to C.R.C.P. 57 requesting a declaratory judgment on the validity of the binding arbitration provisions and an injunction enjoining implementation of the arbitration provisions. Before a hearing was held on the City's complaint, the parties filed cross-motions for summary judgment and stipulated that no disputed issues of material fact existed.

At a hearing on the cross-motions for summary judgment, the district court ruled that the binding arbitration provisions violated the Colorado Constitution and were therefore void and unenforceable. The court ruled that the remaining provisions of the charter amendment establishing collective bargaining were enforceable because they were severable from the arbitration provisions.

## II. ANALYSIS

The City contends that the binding interest arbitration provisions of the charter amendment constitute an unlawful delegation of legislative power because they delegate the authority to set the terms and conditions of municipal employment to an arbitrator who is not sufficiently accountable to an elective official. Petitioner Fraternal Order of Police contends that the arbitration provisions are constitutional because the arbitra-

tor is politically accountable to the City Council. We hold that the binding arbitration system contained in the charter amendment is constitutional because it provides the arbitrator with the political accountability required under article XXI, section 4.

### A. THE PROHIBITION AGAINST DELEGATING LEGISLATIVE POWER

The prohibition against delegating legislative power to politically unaccountable persons is found in the following language in article XXI, section 4 of the Colorado Constitution:

> Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, or one appointed, drawn, or designated in accordance with law by an elective officer or officers, or by some board, commission, person or persons legally appointed by an elective officer or officers, each of which said elective officers shall be subject to the recall provision of this constitution. . . .

The plain language of this section mandates that every person having authority to exercise a governmental power must *either* be an elective officer *or* be appointed or designated in accordance with law by an elective officer.

We first interpreted this prohibition against the delegation of legislative power in the context of a challenge to binding arbitration provisions in *Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 553 P.2d 790 (1976). In *Greeley Police Union* we considered the constitutionality of binding interest arbitration provisions contained in a charter amendment passed by the voters of the City of Greeley. The arbitration system in the Greeley charter amendment provided for the American Arbitration Association (AAA), an independent organization with no

---

5. Section 21.14 of the charter amendment defines these factors as:

(1) the interests and welfare of the public and the financial ability of the City to bear the costs involved; (2) the lawful authority of the City; (3) stipulations of the parties; (4) comparison of the compensation, benefits, hours and other terms or conditions of employment of the

members of the police department involved with other police department members performing similar services in public employment in comparable communities; (5) the cost of living; (6) any claims of failure of a party to bargain in good faith pursuant to section 21.7(c); and (7) other similar standards recognized in the resolution of interest disputes.

political accountability, to submit a list of five names of potential arbitrators to each party. Each party then had the opportunity to cross off two names and number the remaining three names on their list in order of preference. The AAA then would select a single person who was granted the authority to resolve all disputed issues. The arbitrator's decision was binding on the parties.

We held that the binding arbitration provisions in the Greeley charter amendment violated the Colorado Constitution.[6] In reaching our holding, we explained that article XXI, section 4 prohibits the "delegat[ion] of legislative power to *politically unaccountable* persons." *Id.* at 422, 553 P.2d at 792 (emphasis added).

We reaffirmed the holding of *Greeley Police Union* one year later in *City of Aurora v. Aurora Firefighters' Protective Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977). The arbitration system contained in the charter amendment in *Aurora Firefighters'* paralleled the system in *Greeley Police Union* in all important respects in that the AAA was to submit a list of seven names of potential arbitrators to each party and the parties were then to each cross off two names from their list. The AAA was then to select three arbitrators from the names remaining to decide the disputed issues. The *Aurora Firefighters'* system suffered from the same fatal flaw as *Greeley Police Union:* the organization charged with creating the list of potential arbitrators and making the final selection of the arbitrator had no political accountability. Accordingly, we held that *Greeley Police Union* controlled and invalidated the binding arbitration provisions. *See id.* at 440, 566 P.2d at 1358.

---

6. Our opinion in *Greeley Police Union* quotes both article XXI, section 4 and article V, section 35 of the Colorado Constitution as alternate sources of the prohibition against delegating legislative power. *See id.* at 422, 553 P.2d at 792. We recognize here that the provisions of article V, section 35 apply only to actions of the General Assembly by the plain language of the section ("The general assembly shall not delegate...."). Accordingly, we note that our holding in *Greeley Police Union* was based only on the article XXI, section 4 prohibition against delegating legislative power.

In *City & County of Denver v. Denver Firefighters Local No. 858,* 663 P.2d 1032 (Colo.1983), we considered the constitutionality of binding *grievance* arbitration provisions. We contrasted this type of arbitration with binding *interest* arbitration:

Grievance arbitration, on the other hand, arises only after the parties have reached complete agreement on terms and conditions of employment.... When an arbitrator is required to interpret the provisions of an existing agreement, he acts in a judicial capacity rather than a legislative one. The authority to interpret an existing contract, therefore, does not constitute legislative authority, and the nondelegation principle is not implicated in grievance arbitration.

*Id.* at 1038 (citation omitted). Therefore, in upholding the validity of the binding grievance arbitration provisions, we distinguished *Greeley Police Union* and *Aurora Firefighters'* because those decisions both involved binding *interest* arbitration. *See id.* at 1037–38.

Finally, we most recently considered the validity of binding arbitration provisions in *Regional Transportation District v. Colorado Department of Labor and Employment,* 830 P.2d 942 (Colo.1992) [hereinafter *RTD* ]. In *RTD* we considered the validity of binding arbitration provisions contained in the Colorado Labor Peace Act, sections 8–3–101 to – 123, 3B C.R.S. (1986 & 1991 Supp.). The arbitration provisions were challenged as an unconstitutional delegation of legislative authority in violation of both article V, section 35 and article XXI, section 4 of the Colorado Constitution. We first addressed the provisions of article V, section 35[7] and held that RTD was not a municipality and was not

---

7. Article V, section 35 provides: "The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." This section applied in *RTD* because the arbitration provisions were contained in a statute enacted by the General Assembly.

performing a municipal function within the meaning of that section and, therefore, the nondelegation requirement contained in section 35 did not prevent the General Assembly from requiring binding arbitration. *See RTD*, 830 P.2d at 947.

We next considered the article XXI, section 4 challenge to the arbitration provisions and noted that the Director of the Colorado Department of Labor and Employment, Division of Labor (Director) was authorized to order arbitration and to appoint an arbitrator. We restated the test we formulated in *Greeley Police Union* by observing that "[t]o comply with article XXI, section 4, of the Colorado Constitution, the Director must be *politically accountable.*" *Id.* (emphasis added). We found that this political accountability test was satisfied because the Director was appointed by the Executive Director of the Department of Labor, who, in turn, was appointed by the Governor, an elective official subject to recall. Consequently, we held that "the Director's appointment of the arbitrator[ ] compl[ied] with the requirements of article XXI, section 4." *Id.* at 948.

In reaching our holding in *RTD*, we distinguished our decisions in *Greeley Police Union* and *Aurora Firefighters'* by observing that "our concern in these cases was that the arbitrator was not politically accountable." *Id.* In both of those cases, the original list of potential arbitrators was submitted by the AAA and the final selection of the arbitrator(s) was made by the AAA after a striking process. In contrast, we explained that in *RTD* the "selection of the arbitrator is by a politically accountable government official and complies with [a]rticle XXI, section 4." *Id.*

## B. THE ARBITRATION SYSTEM IN THE CHARTER AMENDMENT

Having reviewed the relevant constitutional section and our case law, we turn now to an examination of the arbitration provisions contained in the charter amendment. We divide our analysis of the arbitration provisions into two areas: (1) the political accountability required under article XXI, section 4; and (2) the standards and safeguards required for all delegations of legislative power.

### 1. Political Accountability

As discussed above, after the City Council has created a permanent panel of at least three arbitrators, if an impasse in negotiations during a collective bargaining session occurs, the parties engage in an alternating strike process, whereby each party removes one name from the list until either one or two names remain. If one name remains, that person is selected to be the arbitrator for the dispute. If two names remain,[8] the Mayor selects the arbitrator from the two names remaining.[9]

As we have stated in our prior decisions, the prohibition against delegation of legislative power in article XXI, section 4 requires that an arbitrator empowered to make binding decisions on a public collective bargaining agreement must be politically accountable to an elected official.[10] By requiring the City Council to create the permanent panel of arbitrators, and by allowing the City Council to remove persons from the arbitration panel at any time other than while actively hearing a case, we find that the charter amendment provides for the necessary political accountability we require under article XXI, section 4.

We observe that the arbitration system in the instant case contains important differ-

---

**8.** As discussed *supra* in note 4, if the permanent panel contains an even number of names when the parties begin the alternating strike process, the result will inevitably be that two names remain because to allow another strike by one party would result in an unequal number of strikes.

**9.** We note that section 4.9 of the Charter of the City of Commerce City provides that the Mayor shall preside over meetings of the City Council and shall have the same right to speak and vote

as other City Council members. This charter provision eliminates any diffusion of political accountability that would otherwise result from the Mayor's selection of the arbitrator if the Mayor's office constituted an independent branch of city government.

**10.** Both parties assert, and we agree, that article V, section 35 does not apply to this case because there is no action by the General Assembly.

ences from the arbitration systems we invalidated in both *Greeley Police Union* and *Aurora Firefighters'*. The key distinction between these arbitration systems lies in the fact that the charter amendment in the instant case requires the City Council, composed of elective officials, to create the permanent panel of arbitrators who can hear a dispute. In contrast, the arbitration systems in both *Greeley Police Union* and *Aurora Firefighters'* required the American Arbitration Association, an independent organization with no political accountability, to create the list of potential arbitrators that may be selected, and then also to select the arbitrator(s) from the names remaining after the parties finished the striking process. The *Greeley Police Union* and *Aurora Firefighters'* procedures resulted in the selection of an arbitrator with no connection to any elected officials and, consequently, a complete lack of political accountability. The arbitrator's lack of political accountability compelled our holdings in those cases declaring the binding arbitration provisions to be unconstitutional.

In this case, by contrast, the arbitrator is directly politically accountable to the elective officials comprising the City Council of Commerce City. Any arbitrator selected to hear a case first will have been appointed to the permanent panel by the City Council. The City Council, therefore, has exclusive control over which arbitrators may hear a case.[11] Moreover, the City Council may modify this arbitration panel as they see fit by either removing arbitrators or adding arbitrators, provided the panel always has at least three members. The continuing exercise of control over the arbitrators by the elective officials of the City Council provides the political accountability we require under article XXI, section 4 and distinguishes this arbitration system from the systems we struck·down in *Greeley Police Union* and *Aurora Firefighters'*.

Additionally, an examination of the language of article XXI, section 4 supports our conclusion that an arbitrator selected by the provisions of the charter amendment to hear a case is not prohibited from exercising legislative power. As noted above, article XXI, section 4 provides, "Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, *or one appointed, drawn, or designated in accordance with law by an elective officer or officers . . . .*" (Emphasis added.) In this case, the arbitrator is designated (appointed by the City Council and then selected through the process described above) in accordance with law (the Charter of the City of Commerce City) by elective officers (the City Council). As such, the plain mandates of article XXI, section 4 are met and there is no constitutional violation of the prohibition against delegation of legislative power.

For these reasons, we conclude that the charter amendment's binding arbitration procedures provide for the selection of an arbitrator with political accountability in compliance with article XXI, section 4.

### 2. Standards and Safeguards

▬ As we recognized in *RTD*, a delegation of legislative power must contain "sufficient standards and safeguards" to protect against "unnecessary and uncontrolled exercise of discretionary power." *RTD*, 830 P.2d at 948–49. We find that the charter amendment provides sufficient standards and safeguards to guide the arbitrator's decision.

As noted above, the charter amendment requires the arbitrator to consider the following seven factors when issuing a decision: (1) the interests and welfare of the public and the financial ability of the City to bear the costs involved; (2) the lawful authority of the City; (3) stipulations of the parties; (4) comparison of the compensation, benefits, hours and other terms or conditions of employment

---

**11.** The City contends that the charter amendment's qualification and experience requirements for arbitrators provide only limited discretion to the City Council with respect to the creation of the permanent panel. We disagree. The charter amendment provides that *all* members of the National Academy of Arbitrators and *all* persons on the American Arbitration Association panel of labor arbitrators are *presumptively qualified*. Moreover, other persons may also be qualified if they have served as a neutral hearing officer in labor and management disputes for at least three years and have conducted at least five hearings per year in two of the last three years.

of the members of the police department involved with other police department members performing similar services in public employment in comparable communities; (5) the cost of living; (6) any claims of failure of a party to bargain in good faith; and (7) other similar standards recognized in the resolution of interest disputes. By requiring the arbitrator to consider this comprehensive list of factors, the charter amendment provides the necessary standards we require for the exercise of legislative power.

In addition, the charter amendment provides for adequate safeguards in the form of judicial review of the arbitrator's decision. The judicial review is limited to a consideration of the following three factors: (1) whether the award was procured by corruption, fraud, or other undue means; (2) whether the decision on any issue is arbitrary and capricious, i.e., there is no competent evidence in the record to support the decision; or (3) whether the decision on any issue was reached without considering the factors listed above. The charter amendment's judicial review provision provides appropriate safeguards for review of the arbitrator's decision.[12]

In sum, we find that the charter amendment provides adequate standards to guide the arbitrator's decision and sufficient safeguards for review of the decision.

## III. CONCLUSION

We hold that the binding arbitration provisions of the charter amendment provide for the selection of an arbitrator with political accountability in compliance with article XXI, section 4. Additionally, we find that there are sufficient standards and safeguards for the arbitrator's exercise of discretionary power. Accordingly, we reverse the order of the district court and direct the court on

remand to enter summary judgment in favor of Petitioner.

Chief Justice MULLARKEY, dissenting:

I respectfully dissent. In my opinion, the provisions of Commerce City's charter providing for binding interest arbitration in collective bargaining agreement negotiations between the City and its police officers violate article XXI, section 4 of the Colorado Constitution. The majority's conclusion that the binding interest arbitration provision is constitutional is contrary to both the text of article XXI, section 4 and our precedent.

## I.

The facts underlying this dispute are set forth in the majority's opinion. I recount only those most relevant to my analysis.

A recent amendment to Commerce City's charter requires the City to engage in collective bargaining with its police officers. In the event negotiations between the City and the police officers fail, the charter requires that the parties submit to binding interest arbitration.

To facilitate arbitration, the City Council must create a permanent panel of three or more qualified arbitrators. This panel represents the pool from which the parties select a single arbitrator to hear a particular dispute. Detailed qualifications are specified in the charter amendment. For example, a candidate for the permanent panel must have served as a neutral hearing officer or arbitrator in disputes between labor and management for at least three years and have conducted at least five hearings per year in two of the three years preceding his or her selection for the permanent panel. The City Council may add or remove arbitrators to the permanent panel by vote, provided it always

---

12. We note that the charter amendment appropriately limits the scope of judicial review to avoid any potential separation of powers concerns that would arise if a judge were allowed to conduct de novo review of the arbitrator's decision. *See, e.g., Colorado Land Use Comm'n v.* *Board of County Comm'rs,* 199 Colo. 7, 604 P.2d 32, 35 (1979) ("To place the ultimate determination in the courts through judicial review of this legislative action would violate the constitutional principle of separation of powers.").

retains at least three arbitrators on the panel.

In the event the parties must submit to binding interest arbitration, the charter provides a process for selecting the single arbitrator from the permanent panel who will preside over the arbitration hearing. Both the City and the police officers are presented with a list of the names of the arbitrators on the permanent panel. Both parties then take turns striking names from the list until they have taken an equal number of turns and only one or two names remain. If one name remains, that arbitrator is selected to hear the dispute. If two names remain, the City's mayor selects one of the two arbitrators to hear the dispute.

The arbitrator selected to hear the dispute is authorized to bind Commerce City to the police officers' final offers on disputed issues of negotiation. The arbitrator's decisions are subject only to limited judicial review.

## II.

The issue in this case is whether this decision-making process comports with article XXI, section 4 of the Colorado Constitution. Article XXI, section 4 provides in relevant part:

Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, or one appointed, drawn, or designated in accordance with law by an elective officer or officers, or by some board, commission, person or persons legally appointed by an elective officer or officers, each of which said elective officers shall be subject to the recall provisions of this constitution. . . .

Colo. Const. art. XXI, § 4. This provision was added to the Colorado Constitution in 1912 and was part of the comprehensive reform effort that added the initiative, referendum, and recall provisions to our constitution. See Art. XXI, §§ 1–4, 1913 Colo. Sess. Laws 672, 672–77.

As the majority notes, we previously have addressed the applicability of article XXI, section 4 to binding interest arbitration between a government entity and its employees. The majority observes that, in our most recent decision on this issue, *Regional Transportation District v. Colorado Department of Labor and Employment*, 830 P.2d 942 (Colo.1992) (*RTD*), we permitted delegation of governmental power to an arbitrator where "the 'selection of the arbitrator [was] by a politically accountable government official.'" Maj. op. at 137 (quoting *RTD*, 830 P.2d at 948). The majority distinguishes our decision in *RTD* from our earlier decisions in *Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 553 P.2d 790 (1976), and *City of Aurora v. Aurora Firefighters' Protective Ass'n*, 193 Colo. 437, 566 P.2d 1356 (1977), holding that delegations of power to arbitrators in binding interest arbitration violated article XXI, section 4. "In both of those cases, the original list of potential arbitrators was submitted by the [American Arbitration Association (AAA)] and the final selection of the arbitrator(s) was made by the AAA after a striking process." Maj. op. at 137.

I generally agree with the majority's statement of our precedent construing article XXI, section 4. I disagree, however, with the majority's application of the law to the facts of this case and with the standard it establishes for analysis of delegations of governmental power under article XXI, section 4.

## III.

I interpret article XXI, section 4 to require that the entire process of appointing a person authorized to exercise a governmental power be performed exclusively by politically accountable officials so that those officials can be held accountable through the recall process. As I will explain below, this ensures that any exercise of governmental power is performed on behalf of and in the interests of the people.

Thus, I conclude that the people directly or through their elected officials and the appointees of such officials must establish the legal authority and any qualifications for a position whose occupant will exercise governmental power. Elected officials or their appointees then must have exclusive responsibility for

screening applicants for that position. Final selection of the person who will have authority to exercise governmental power also must be performed solely by elected officials and their appointees.

## A.

I note first that article XXI, section 4 directs its attention to persons actually authorized to exercise a governmental power. Thus, I find that the City Council's naming of individuals to the pool of potential arbitrators is not the constitutionally relevant appointment under article XXI, section 4. Rather, the relevant appointment is the selection of the actual arbitrator who will preside over binding interest arbitration between the City and the police officers.

### 1.

On its face, the relevant provision of article XXI, section 4 applies to "[e]very person having authority to exercise or exercising any public or governmental duty, power, or function." Colo. Const. art. XXI, § 4. Persons not authorized to exercise a public or governmental duty, power, or function are not within the terms of the provision.

Article XXI, section 4 further provides that persons authorized to exercise a governmental power, if not themselves elected officials, "shall be ... appointed, drawn, or designated in àccordance with law." *Id.* I interpret this phrase to mean that a person authorized to exercise a governmental power must be appointed, drawn, or designated as a person authorized to exercise that power, not merely as a candidate who may obtain such authority should he or she receive further approval.

This interpretation of "appointment" is supported by our precedent. In *Mesa County School District No. 51 v. Goletz*, 821 P.2d 785, 787 (Colo.1991), we defined "appointment" as the "designation of a person, by the person or persons having authority therefor, to discharge the duty of some office or trust." We recognized two components to an appointment. "First, the person making the designation must be vested with the authority to do so. Second, the appointment must

be *for the purpose of discharging the duty of some office or trust.*" *Goletz*, 821 P.2d at 787 (emphasis added).

The arbitrator selected to preside over the binding interest arbitration between the City and the police officers has authority to exercise a governmental power, namely to bind the City to terms and conditions of employment between the City and the police officers. Furthermore, selection of a single person from the pool for the purpose of investing that person with the power to bind the City to terms of employment with the police officers constitutes an appointment for the purpose of discharging a particular office. Accordingly, article XXI, section 4 applies to an individual who is selected to be the arbitrator presiding over a particular dispute.

In contrast, an individual whom the City has named to the pool but not selected to preside over binding interest arbitration in a particular case has no authority to exercise a governmental power. Such an individual's authority to exercise a governmental power is contingent on the City Council's decision not to remove him or her from the pool and, should a dispute arise, on the decisions of the City Council and the police officers not to strike his or her name from the list of arbitrators. Moreover, the City Council's selection of an individual for membership in the pool does not qualify as an appointment or designation under article XXI, section 4, because the purpose of that selection is not to vest that individual with authority to exercise a governmental power. Consequently, such an individual does not fall within the provisions of article XXI, section 4.

Accordingly, by its terms, article XXI, section 4 applies only to an individual actually appointed for the purpose of arbitrating a dispute and exercising the power to bind the City to terms of employment with the police officers. It does not apply to arbitrators merely appointed to the permanent panel.

### 2.

Our precedent supports my conclusion that the selection of the arbitrator authorized to exercise a governmental power, and not merely the creation of a pool of candidates

who may be selected, is the relevant appointment for purposes of analysis under article XXI, section 4. In *Greeley Police Union* and *Aurora Firefighters'*, we held that delegations of governmental power to arbitrators violated article XXI, section 4 not only because a third party, the AAA, created the list of potential arbitrators that could be selected, but also because the AAA made the final selection of the arbitrators actually authorized to preside over the dispute. In both of these cases, we did not focus on the creation of the list of potential arbitrators who might be appointed to hear a case. Rather, we placed our concern where it reasonably belonged: with the actual selection of an arbitrator authorized to exercise a governmental power. *See Greeley Police Union,* 191 Colo. at 422, 553 P.2d at 792 (stating that ultimate decision-making authority must remain in the hands of persons who are accountable to the public). This principle is consistent with the purpose of the constitutional provision at issue here: to encourage elected officials and their appointees to exercise governmental power in the interests of the people who elected them, lest they be recalled from office.

Thus, unlike the majority, I find that the City Council's exclusive control over the membership of the pool of potential arbitrators does not itself resolve whether the arbitration provisions of Commerce City's charter are constitutional under article XXI, section 4. Rather, we must look to whether the actual selection of the single arbitrator authorized to bind the City to terms of employment between the City and the police officers satisfies constitutional requirements.

### B.

### 1.

Article XXI, section 4 requires that a person authorized to exercise a governmental power be appointed, drawn, or designated "by an elective officer or officers, or by some board, commission, person or persons legally appointed by an elective officer or officers, each of which said elective officers shall be subject to the recall provisions of this constitution." Colo. Const. art. XXI, § 4. We have interpreted this aspect of article XXI,

section 4 to mean that only "politically accountable" officials may appoint persons authorized to exercise a governmental power. *See RTD,* 830 P.2d at 947–48.

The test for whether an officer is politically accountable is whether he or she is an elected official or can trace his or her appointment through a chain of legal appointments to an elected official. The test for whether an appointment is one *by* a politically accountable official is whether elected officials and their appointees bear the exclusive responsibility for deciding who is authorized to exercise governmental power. This means that the authorization of the exercise of governmental power, the specification of any qualifications on who may exercise that power, and the selection of which person will exercise that power all must be performed by elected officials and their appointees or by the electorate itself.

For example, in *RTD* we explained why an arbitrator's appointment complied with the requirements of article XXI, section 4:

> The arbitrator was appointed by the Director. The Director is appointed by the Executive Director of the Department of Labor, who is appointed by the Governor, with the consent of the senate, and serves at the pleasure of the Governor. The Governor holds an elective office and is subject to recall under the Colorado Constitution, article XXI, section 4. Both the General Assembly's authorization of the Director to order arbitration, and the Director's appointment of the arbitrator, comply with the requirements of article XXI, section 4.

*See RTD,* 830 P.2d at 947–48 (citations omitted). In stating that both the General Assembly's authorization of the appointment and the appointment itself complied with article XXI, section 4, we indicated that all decisions regarding which person was authorized to exercise the governmental power were made by politically accountable officials. *See id.*

In contrast, we held that the procedures for selecting arbitrators in *Greeley Police Union* and *Aurora Firefighters'* violated article XXI, section 4. In those cases, the authority and qualifications of the arbitrator's

position were promulgated by politically accountable officials. Yet the AAA, a private organization, was authorized to select the initial pool of candidates for the position and to make the final decision of which candidate would fill the position. *See Aurora Firefighters'*, 193 Colo. at 439–40, 566 P.2d at 1357; *Greeley Police Union*, 191 Colo. at 422, 553 P.2d at 791. Thus, the selection process was not performed exclusively by politically accountable officials.

### 2.

Our decisions requiring that persons authorized to exercise a governmental power be appointed by a politically accountable official do not address the question why article XXI, section 4 requires such political accountability. Only if we answer that question will we have a solid basis for analyzing the many fact patterns under which future cases will arise. As I suggested, the answer lies in the placement of this requirement in the recall article of the constitution. Because the recall procedure allows voters to remove elected officials from office during their tenures, it provides an ongoing assurance that elected officials and their appointees will exercise governmental power on behalf of and in the interests of the people.

Article XXI, section 4 states a principle that is not limited to the right of recall. A central tenet of representative democracy is that elected officials act on behalf of and are accountable to the people who elect them. *See Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361, 1364 (Colo.1984); *Greeley Police Union*, 191 Colo. at 422, 553 P.2d at 791–92; *Dearborn Fire Fighters Union v. City of Dearborn*, 394 Mich. 229, 231 N.W.2d 226, 235 (1975); *Salt Lake City v. International Ass'n of Firefighters*, 563 P.2d 786, 790 (Utah 1977). The desire to hold office and to avoid recall motivates elected officials to act in the interests of the people and to appoint officials who will do the same. Thus, because the officials are politically accountable to the people, the people have a greater assurance that their government officials will exercise their authority in the interests of the people.

The Colorado Constitution explicitly requires that all persons exercising governmental power be appointed by politically accountable officials. By tying the exercise of governmental power to political accountability and the recall provision, article XXI, section 4 ensures that exercises of governmental power will be in the interests of the people.[1]

### IV.

#### A.

The majority reasons that the City Council's exclusive control over appointment to the permanent panel "provides the political accountability we require under article XXI, section 4 and distinguishes this arbitration system from the systems we struck down in *Greeley Police Union* and *Aurora Firefighters'*." Maj. op. at 138. I disagree.

As I have noted above, the relevant appointment in this case is not the selection of the permanent panel but the selection of the arbitrator authorized to bind the City to employment terms between the City and the police officers. Thus, although I do not dispute that the City Council is solely accountable for the membership of the permanent panel, I find it necessary to examine whether it is politically accountable for the final selection of the arbitrator authorized to exercise governmental power.

Article XXI, section 4 requires that a politically accountable official appoint the arbitrator who will exercise the governmental power to bind the City to terms of employment with the police officers. This ensures that (1) the arbitrator who exercises governmental power will be the arbitrator that the voters, through their elected officials, have chosen as the person best suited to represent their interests; and (2) the voters, through the recall process, can hold elected officials responsible for the arbitrator's decisions.

---

1. The policy in favor of delegating governmental power only to persons who will exercise it on behalf of the people is also expressed in article V, section 35 of the Colorado Constitution and our cases interpreting that provision. *See* Colo. Const. art. V, § 35; *Town of Holyoke v. Smith*, 75 Colo. 286, 226 P. 158 (1924).

The striking process prescribed by Commerce City's charter permits the police officers to exclude particular persons from presiding over a dispute when doing so is in their best interests, regardless of whether exclusion is in the interests of the people. The process removes governmental decisions "from the aegis of elected representatives, placing them in the hands of an outside person with no accountability to the public." *Greeley Police Union*, 191 Colo. at 422, 553 P.2d at 791–92. Thus, by allowing the police officers to strike potential arbitrators from the list, the people are deprived of full control over the selection of the representative who will best represent them. Because the use of the arbitrator will arise only when the negotiations have come to an impasse, the police officers are in an adversarial position with respect to the elected officials and the people they represent. In other words, the interests of the police officers are directly adverse to the interests of the people at the point in time when the arbitrator is selected. The very purpose of the striking process from the police officers' perspective is to eliminate those persons most likely to represent (i.e.favor) the interests of the people as opposed to the interests of the police officers.

The arbitration provisions of Commerce City's charter are contrary to the principle of recall in a representative democracy and frustrate the central purpose of article XXI, section 4. Accordingly, I find that the arbitration provisions of Commerce City's charter do not provide sufficient political accountability to ensure that the people may appoint the arbitrator of their choice to represent their interests and hold their elected officials accountable if that arbitrator is not appointed.

## B.

The majority reasons that because the City Council has exclusive control over the membership of the permanent panel, it "has exclusive control over which arbitrators hear a case." Maj. op. at 138. As such, the majority circumvents the requirement that the relevant appointment—the one that invests the arbitrator with authority to exercise a governmental function—be performed entirely by politically accountable officials.

I disagree with the majority's reasoning. Although the City Council does have exclusive control over which arbitrators it appoints to the permanent panel, it does not have "exclusive control over which arbitrators hear a case." *Id.* Rather, the striking process prescribed by Commerce City's charter injects the police officers, a private party, into the process of selecting the arbitrator who is authorized to exercise governmental power to determine the terms of the police officers' employment with the City.

The majority does not explicitly state its reason for concluding that the City Council's exclusive control over the composition of the panel is the same as exclusive control over the arbitrator who hears a particular case. Nevertheless, I infer that this conclusion must rely on one of two assumptions: (1) that among individuals appointed to the permanent panel, the City Council has no preference for a particular arbitrator to preside over a specific dispute; or (2) that all persons appointed to the permanent panel are authorized to bind the City to employment terms in disputes that may arise between the City and the police officers.

The first assumption cannot be correct. The individuals on the permanent panel will not have identical experience, training, ability, or familiarity with the issues underlying a particular case. During a given negotiating session, an arbitrator may be required to address issues that touch on his or her personal strengths or weaknesses. At least in some cases, the City Council will have a special interest in delegating or denying authority to a particular person on the panel. In short, not all arbitrators will be equally suited to hear every dispute.

Section 21.12(e) of the Commerce City Charter, which provides the City Council power to strike names from the list of permanent arbitrators, expressly recognizes that, in a given dispute, the City Council may prefer some arbitrators on the permanent panel over others. If the City Council could have no preference between arbitrators on the permanent panel, such a provision would be unnecessary.

The second assumption is also incorrect. Appointment to the permanent panel is merely a condition precedent to an arbitrator's power to preside over a case. An individual has no power to preside over a case unless the City Council retains him or her on the permanent panel and, if a dispute arises, neither the City Council nor the police union strikes his or her name from the list of arbitrators. Thus, the City Council has not authorized all of the arbitrators on the permanent panel to bind the City to terms of employment with the police officers.

I am not persuaded by the majority's conclusion that the City Council's exclusive control over the membership of the permanent panel gives it exclusive control over the arbitrator who is appointed to hear a given case. Control over the initial list of potential arbitrators is relevant only insofar as it maintains control by politically accountable officials over final selection of the arbitrator who will have authority to exercise governmental power.

In this case, the voters of Commerce City passed the charter amendment providing for collective bargaining and binding interest arbitration. This clearly satisfies the requirement that the legal authority and qualifications for the arbitrator be promulgated by a politically accountable body. Next, the City Council, a politically accountable body, appointed members of the permanent panel, thereby establishing the pool of candidates who could be authorized to bind the City to terms of employment with the police officers.

The problem in this case is that, when a dispute arises, the police officers are given the power to narrow the pool of candidates, thereby participating in the selection process. The police officers' power to strike names from the list of arbitrators on the permanent panel amounts to a veto that results in a new, smaller pool of candidates for the final position. On the one hand, a strike constitutes the removal of a single candidate from the list. On the other, however, it represents the selection of those remaining who ultimately may receive the authority to hear the dispute as the arbitrator.

Thus, part of the selection process is unconstitutionally delegated to a private party, and the purpose behind requiring that persons authorized to exercise governmental power be appointed by politically accountable officials is frustrated. In *RTD*, the voters could rest assured that the arbitrator appointed to hear the dispute would represent their interests, because the Governor ultimately was responsible for the selection of the arbitrator and could be held politically accountable for his selection. Here, the City Council only has exclusive control over the membership of the pool. Because the City Council does not have exclusive control over the final selection of the arbitrator who will hear a dispute, Commerce City's voters have no way to ensure that the single arbitrator selected from the pool will be the arbitrator of their choice. The arbitration provision of Commerce City's charter essentially allows voters, through the City Council, to nominate three or more candidates for the arbitrator who will represent their interests in a binding arbitration hearing without permitting them to select the single representative who will exercise governmental power on their behalf. This frustrates the purpose behind article XXI, section 4.

### V.

Article XXI, section 4 places the responsibility to appoint persons authorized to exercise governmental power—not merely the responsibility to create a list of candidates that a third party may appoint—exclusively in the hands of politically accountable officials. Under the Commerce City charter, the City Council and the police officers both participate in the selection of the arbitrator who exercises the power to bind the City to terms of employment with the police officers. Thus, the arbitrator authorized to bind the City to terms of employment between the City and the police officers is not one appointed by a politically accountable official within the requirements of article XXI, section 4. Such a delegation of the City Council's power violates the constitution.

Accordingly, I would affirm the trial court's order.

Justice KOURLIS joins in this dissent.